JACOBY ET UX v. GALLAHER

———

(March 4, 1929. Opinion and Decree.)

———

Borah, Himel and Bloch, of New Orleans, attorneys for plaintiffs, appellants.

Gordon Boswell, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. Plaintiffs appeal from a judgment maintaining an exception of no cause of action.

Andy Jacoby and his wife, Flora, are residents of Jefferson County, Missouri. They bring this suit against Robert H. Gallaher for damages in the sum of $10,210.00 for the alleged negligent killing of their five-year-old son, Carl Andrew Jacoby.

The petition alleges that the defendant, Gallaher, who resides in New Orleans, was, at the time of the accident, motoring through the State of Missouri along "Federal Highway No. 61" in Jefferson County; that about 10:30 a. m. on Sunday, July 31, 1927, their deceased son, with his elder brothers, was returning from Sunday School and walking in a northern direction along the left hand side of the roadway; that the boys were in plain view of Gallaher, who was traveling on the same road in the same direction, for at least a half mile; that Gallaher was speeding along the road at the rate of thirty-five to forty-five miles an hour, in violation of a statute of the State of Missouri adopted in 1921, which provides that speed in excess of twenty-five miles an hour is "evidence presumptive, but not conclusive of driving at a rate of speed which is not careful and prudent;" that he gave no warning of his approach; that when the boys reached a "frequently used crossing leading to H. Chouteau Dyer's place," the younger boy exclaimed, "Here's where we cross," and started across the road, when he was knocked down by defendant's automobile and his skull crushed, from which injury he died without regaining consciousness; that Carl Andrew Jacoby "broke loose from his brother Clarence, who at that time was leading him by the hand, and ran across the road. The older boys then for the first time noticed or saw the car coming, and undertook to grab their younger brother, but the car was coming so fast and was so nearly on them all, that it was impossible for them to rescue their brother;" that in approaching the boys it was the duty of defendant to slow down, sound his horn, give warning of his approach, and have his car under such control as would enable him to avoid the accident should any or all of the boys cross the road; that "instead of slowing down, said Robert H. Gallaher was driving at thirty-five or forty-five miles an hour and on approaching sounded no horn and gave no alarm."

Defendant contends "that the petition not only fails to recite a cause of action, but goes further and exculpates defendant," because "manifestly, the child's actions made it humanly impossible for defendant to have avoided the accident. In fact, the actions of the child were so sudden, swift and unanticipated that the older boys, because of the proximity of defendant's automobile when he ran into its path, realized that it would have been suicidal for them to have made any effort to have rescued him." In support of this contention we are referred to Payne vs. Seibert, 4 La. App. 591; Valcour vs. Hubig Co., 4 La. App. 521; Powers vs. Simmons, 7 La. App. 523; Elmendorf vs. Clark, 143 La. 971, 79 So. 557, L. R. A. 1918F, 802.

In each of the cited cases, with the exception of Payne vs. Seibert, recovery was denied for the injury or death of children

running from sidewalks into city streets and across the path of automobiles at a time when no opportunity was afforded the driver to avoid running into them.

In this case the child was walking along a public road in a rural section and had been in plain view of defendant for half a mile. There is, in our opinion, a marked difference between a roadway in the country and a street in the city—a difference which distinguishes this case from the principle underlying the cited cases. A driver who observes children walking along a sidewalk adjacent to a city street has no reason to suppose that they will run across his path, and he is under no obligation to guard against the possibility of their doing so. In the first place the sidewalk in the city is dedicated to the use of pedestrians only and under normal conditions there is no occasion for, or necessity of, pedestrians using the city streets, which, except for passage at intersections, is, under ordinary circumstances, exclusively dedicated to vehicular traffic. But when children are seen walking or playing in the city streets, automobiles must take extraordinary precaution to prevent injuring them. In Albert vs. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A, 240, it was held that the chauffeur of an automobile, which ran over and killed a 10-year-old boy, was negligent, because he saw the boy in the street in a little soap box wagon, affixed to an ice wagon by a rope, from 90 to 150 feet before he reached him, and failed to prevent the accident, the Court saying:

"It is admitted that both he (the defendant) and the chauffeur saw the ice wagon with the soap box wagon, containing the two boys, trailing behind it in ample time (whether within a distance of 150 or of 90 feet) to have enabled them to have fully appreciated the situation and have taken the precautions necessary to avoid an accident. There is no suggestion in the record that there was any other vehicle in the street that interfered or threatened to interfere with them, and all they had to consider was how not to run over the boys."

After referring to other things that should have been done by the chauffeur, the Court said:

"The next precaution should have been to slow down the automobile so that in no event or situation that was conceivable to its occupants could they kill the boys."

In Danna vs. City of Monroe, 129 La. 138, 55 So. 741, it was held:

"When a motorman and conductor of a street car see a child 20 months old in the street facing or approaching the track and in dangerous proximity thereto, the car should be brought, and kept, under control until there no longer exists a possibility that the child will get on the track and be run over; and by bringing and keeping the car under control is meant that the motorman should cut off the power, reduce the speed, and keep the brake chain wound up so that the car may be stopped instantly or within one or two feet."

In Monge vs. N. O. Ry. & Light Co., 145 La. 435, 82 So. 397, it was held:

"A motorman, seeing a two-year-old child by itself on a street less than eight feet from the car track, should take all necessary precautions for guarding against the possibility of the child going suddenly on the track, and, in the case where a motorman failed to take such precaution and the child was injured, the verdict finding the street car company negligent was warranted."

In Fulco vs. Shreveport Traction Co., 138 La. 809, 70 So. 812, it was held:

"A motorman, operating an electric car, and seeing a child under four years of age running ahead of the car and in dangerous proximity to the track, is guilty of gross negligence if he fails to maintain

such slow speed and keep his car at such distance from the child as to be able to avoid a collision in case the child attempts to cross the track."

In Hahn vs. P. Graham & Co., 148 La. 55, 86 So. 651, where plaintiff was not allowed to recover because the driver of the truck which ran into him was held blameless, because he did not see the boy before the accident, the Court said:

"If he had seen the child at any time before the accident it might be held that it was a duty to have kept the child in view so as to have avoided a possible accident."

In the country the public roadway is shared by vehicles and pedestrians and there is no impropriety, nor is there any negligence implied, in the practice of country residents walking along the side of the road. The highway is intended for their use as well as for the use of automobiles. Consequently, when a motorist observes pedestrians on the roadway he must be careful not to injure them. It is his duty to give warning of his approach and to keep his automobile under control. This is true in the case of adults, but in the case of children, extraordinary precaution is necessary.

Greater care is required of one who is running an automobile where there are children in the roadway than is necessary in the case of adults. Children are only required to exercise such care as may reasonably be expected of them. In other words, such as children of the same age ordinarily and reasonably exercise under like circumstances. (See Elliott, Roads and Streets, Vol. 2, page 1545.)

In Kelly vs. Ludlum, 9 La. App. 57, 118 So. Rep. 781, decided June 28, 1928, by our brethren of the Court of Appeal for the First Circuit, it was held:

"It is conceded, of course, that plaintiff was not negligent in walking along the roadway, and it is, we think, well settled, that he did not have to maintain a lookout for automobiles approaching from his rear (McKenna vs. Lynch, 289 Mo. 16, 233 S. W. 175; Darus vs. West, 179 Wis. 279, 191 N. W. 506; Blashfield, Automobiles, vol. 2, p. 1057) having the right to assume that the driver of the automobile would exercise care in maintaining a lookout for him, and the sole question is whether or not the driver did maintain such lookout and exercise ordinary care in operating the automobile. * * *

"The driver of the automobile had a clear view of the situation as the car approached plaintiff, and there was ample time, distance and space for him to have changed the course of the automobile so as to allow a greater margin of safety, and, when the plaintiff apparently did not notice the signals given he was bound to realize the hazard of driving the automobile so close to plaintiff due to the fact that plaintiff might deviate from his course or that he might be taken unawares by the sudden discovery of the automobile and make such a deviation as to bring him in front of the automobile. Blashfield, Automobiles, vol. 1, p. 597.

"Each of the parties had the right to use the highway, but the danger or hazard from a collision was much greater for plaintiff than for the driver of the automobile, and the driver was bound to take notice of the danger and to drive the automobile accordingly; that is, the driver of the automobile was charged with notice that plaintiff might vary slightly from his course or that he might be taken unawares by the discovery of the automobile in close proximity to him and involuntarily place himself in front of the automobile, and the evidence showing that the driver operated the car with such danger in view and that the accident resulted from the danger which should have been anticipated by the driver of the automobile, the owner of the automobile, under whose direction the automobile was being, operated, was liable."

See also, Hornbuckle vs. McCarty, 295 Mo. 162, 243 Southwestern 327, 25 A. L. R. 1508.

In the case at bar it was the defendant's duty, on seeing the children in the roadway, to have sounded his horn and checked the speed of his car. The fact that the child broke away from his brother and ran across the path of the automobile was not the proximate cause of the accident, for, if warning had been given, the child would have been removed by his elder brothers to a place of safety, or at least would have been firmly held and prevented from running across the road when reaching the pathway leading to H. Chouteau Dyer's place. In any event, if defendant had slowed down and had his car under control he could have avoided the accident.

The rule that motorists are held to unusual care where children are concerned, applies also to adults, who, to the knowledge of the driver, possess some infirmity, such as deafness, or impaired sight, or who suffer from some temporary disability such as intoxication. The physical infirmity in one case, and the extreme youth in the other, affect the ability to sense impending danger and to exercise judgment in the emergency by the selection of proper means and observing the necessary precaution to avoid an accident.

We are of opinion that the petition in this case presents a cause of action and that the judge, a quo, erred in maintaining the exception of no cause of action.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that this case be remanded for further proceedings according to law, and consistent with the views herein expressed.