## MOREAU v. SOUTHERN BELL TELE-PHONE & TELEGRAPH CO., Inc.*
### No. 4979.

Court of Appeal of Louisiana. Second Circuit.
Jan. 9, 1935.

Gremillion & Moreau, of Marksville, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

MILLS, Judge.

The repair truck of defendant company, manned by J. D. Anderson, its driver, and Laborde, an employee, on May 1, 1933, at about 4 o'clock in the afternoon, was proceeding out of Marksville, Avoyelles parish, in a southerly direction towards the town of Hessmer. The highway connecting these two towns is paved to a width of 18 feet, with a black line marked down the middle and with the usual dirt shoulder. The truck had reached a point opposite the residences of Mr. Ulysses Roy on the west and George Chatelain on the east, just beyond the corporate limits of Marksville, when Anderson observed ahead of him a crowd of twelve to fifteen school children on his left-hand side of the road on their way home from the school in Marksville. He also observed a car driven by Mrs. N. E. Laborde that had passed a school bus driven by Riche, both coming towards Marksville. Both Anderson and Mrs. Laborde came almost to a complete stop with the children in between them. Anderson and his companion employee both say that apparently the whole bunch of children crossed in front of the Laborde car to the right or west side of the road, after which both cars started up again; that, just as the truck was passing the car, plaintiff's son, seven and one-half years old, ran, with his head down and with a garment or something over his head, from behind the Laborde car into and against its left front wheel. The force of the impact threw the boy backward onto the pavement, and caused a compound fracture of both bones of the right leg below the knee and a greenstick fracture of the clavicle. Anderson did not see the boy until he was within 4 feet of the truck, too late to avoid the collision, but, in an effort to do so, he applied his brakes and swerved sharply to his right, the truck coming to a stop with its right front wheel on the dirt shoulder. The boy was not run over or struck by the radiator or front of the car. His leg appears

to have been broken by coming in contact with the hub cap of the left front wheel.

The acts of negligence on the part of Anderson alleged in the petition filed by Charles A. Moreau, the father of the boy, on his own behalf and for the use and benefit of the son, are that, though the situation called for extreme caution, he proceeded "heedlessly, and speedily, and negligently and carelessly," without having his car under control or slowing down, blowing his horn, or stopping, striking plaintiff's son Paul on or to the left of the black line.

Defendant denies any negligence on the part of its driver, contending that the accident was solely due to the fault of the boy in running across the road and into its truck with his head covered and paying no attention to what he was doing or where he was going; in the alternative, that these acts constitute contributory negligence and bar recovery.

From the judgment of the lower court rejecting plaintiff's demand, he has appealed.

Though the boy is described as unusually bright for his age, he is not tendered as a witness; his father explaining that he is bashful and disinclined to talk about the accident. Neither do we have the benefit of the testimony of any other of the children nor of Mrs. Laborde, the driver of the car meeting the truck.

Plaintiff contents himself with the testimony of only one eyewitness, Claude Riche, the driver of the school bus. He says that, as he neared defendant's truck, he noticed that it was edging toward the black line, and that, as he slowed down and blew his horn as a warning to its driver, Mrs. Laborde passed him going in the same direction toward Marksville; that he saw the boys on the highway and blew his horn to warn them; that he saw the Moreau boy standing on the shoulder, but did not see him run out into the road until just as he collided with the truck about on the black line. He says that he was about 150 feet from the truck; that the car of Mrs. Laborde had passed on, so that nothing obstructed his view at the time the boy was hit. He says Anderson was making about 30 or 35 miles per hour, and that he did not notice him slow down or hear the sounding of his horn. He says that Anderson said he did not see the boy, who was picked up about 3 feet to the left of the black line, and that he was thrown back when hit. He testifies that the truck stopped in about 20 to 25 feet, and that Anderson picked the child up 8 or 10 feet from its

rear. He says that Mrs. Laborde must have passed the children about 20 feet ahead of Anderson; that young Moreau was on her right when she passed him; that he saw him on the shoulder, but he does not know how he got to the truck.

As is so frequently the case, his testimony differs materially from a written statement read to and signed by him four days after the accident. That statement reads: "Was bringing school bus towards Marksville from towards Bunkie. Was about 200 feet from place of accident when it happened. Saw several children playing on right side of road. Saw little boy run across road into front end of car. Anderson cut car to right and stopped. Picked up child, about even with rear wheel in highway. Doesn't know how fast car was running but was not going very fast. Looked like boy raised his coat over his head just before running into car. Mr. Anderson carried boy in his arms on way to doctor's office in school bus."

Upon cross-examination he admits the correctness of everything in this statement except that the boy was running. He testifies: "He wasn't running, but he was walking. No, he was not running fast, but just going toward the car this way, and he raised the coat and then he hit him. I didn't say he ran across the road. I couldn't say that."

W. A. Morrow, dean of the Marksville bar, viewed the scene of the accident a few hours after its occurrence and noticed blood on the west side of the black line in the middle of the paved road; saw the black skid marks about 30 or 40 feet in length. The father of the injured boy says he found no blood, and that the skid marks seemed to him about 18 or 20 feet long.

Mr. George Chatelain says he saw blood spots on the east side 18 to 20 inches from the black line; saw the skid marks, but could not estimate the distance; says he saw the truck for a considerable distance before the boy was struck, and that he "wouldn't say it was running fast."

For defendant, J. D. Anderson, its driver, testifies that, just after passing the corporate limits going out of Marksville, he observed the group of about a dozen school children on his left-hand side of the road; that, as Mrs. Laborde's car approached from the opposite direction, her car and his truck slowed down almost to a stop about 30 feet apart, with the children between them, and each blew its horn; that apparently all of the children ran in front of the Laborde car across to the right-hand side of the road.

Both cars started up again, and, just as his truck was passing the Laborde car, he saw some one, about 4 feet from the truck, coming from behind the car, running with his head down, and covered with something, toward the truck; that he immediately applied his brakes and swerved sharply to the right, but that the boy kept on and ran into the front left wheel of his truck and was knocked backward to the pavement; that he was driving on his right-hand side of the road, at least 2 feet from the black line, in second gear, making not over 12 or 15 miles per hour; that he and Laborde, his fellow employee, picked the child up at a point about even with the back wheel of the truck. Anderson was present when Riche, the school bus driver, made his statement to defendant's attorney, which was taken down and signed, and says that the statement correctly quotes him; that he did not see the Moreau child remaining on the left-hand side, as his view was obstructed by the Laborde car. He thus explains the accident: "When Mrs. Laborde's car saw the children, she blew her horn. They were right near her car. I blew my horn. We both slowed down. The children ran in front of her car and my car, but one of the children was in back of her car—in other words, whenever she blew her horn he must have hesitated about going across, waited and decided to go back of her car, and when she started, I started up."

K. J. Laborde, Anderson's fellow employee, who was riding with him, corroborates Anderson in every respect. His description of the occurrence is: "Well, we had been in Marksville that afternoon repairing local trouble, and on our way back to Bunkie we met a number of children playing in a ditch, and they started running across the highway, and didn't pay no attention to the traffic on the highway. We met another car coming toward Marksville, and Mr. Anderson and that other car came just about to a stop. I don't know whether the other car did or not, but the highway was clear, so the lady started off. So did Mr. Anderson. At the time he started off, the child came from back of her car. He must have been in the ditch. He came from back of the lady's car and run into the left front wheel."

We think the clear preponderance of the testimony, consisting of the testimony of Anderson and Laborde supported by the signed statement of Riche and contradicted only by that witness's verbal testimony, establishes the fact that the accident happened as described by defendant's witnesses. However, we are not satisfied that this testimony clears them of responsibility for the accident.

The law requires of drivers of automobiles the greatest care when approaching children along a highway—the greater the number of children, the greater the care required. According to Anderson's testimony, while practically stopped he saw this crowd of at least twelve children playing on his left side of the road. He saw a number of them run across in front of the Laborde car to the right-hand side. He wrongfully assumed that all had passed and started up his car. His view of the highway and left shoulder was obstructed by the Laborde car. He did not know, and could not see, whether or not any children were still on the left side in back of her car. This is clearly proven by the fact that he did not see the Moreau child, who was standing on the shoulder, until it was within 4 feet of his front wheel, which he says was 2 feet to the right of the black line. To have avoided the accident, all that was required of Anderson was to remain stopped until the Laborde car had passed, giving him a clear view of the manifestly dangerous situation ahead. In view of the degree of care required of him by the law in such a situation, he was at fault and negligent in starting forward before he was sure that the highway was clear and that all the children had passed. This fault was the proximate cause of the accident. It is true that it is negligence for a pedestrian to cross a road from behind a car heedlessly and without looking out for traffic. But in the case of children a tendency toward such heedlessness is recognized, and knowledge of it is imputed to all drivers. It is for this reason that a greater degree of care is required of them when children are seen along the road. It would be unreasonable to say that drivers are required to anticipate heedlessness on the part of children, but, if they do not, no liability attaches, because the children are contributorily negligent in being heedless. An unusually bright child seven and one-half years old is just on the border line of liability for contributory negligence. The Moreau child was patently negligent, but we do not think, in this case, that such negligence bars recovery, whether put upon the ground that it was not a proximate cause of the accident (Hataway v. F. Strauss & Son, 158 So. 408, this day decided by this court), or that defendant's driver had the last clear chance to avoid the accident in that it was his legal duty under the circumstances to see that the highway was clear.

The law presumes that a person sees what he should see.

The law in this state as to the care required of a motorist approaching children is clearly stated in the case of Brown v. Wade (La. App.) 145 So. 790, 792, to be: "When the operator of an automobile discovers the presence of small children on the roadside, ahead of him, it is his duty to travel at such a rate of speed, and bring his vehicle under such control, that an accident will be averted, regardless of the unexpected and unforeseen movement of any of the children. He has not the right to assume that a child, especially one of tender years, will exercise discretion needed to protect it from the dangers of rapid automobile traffic."

The case holds further that motorists must anticipate that children act upon impulse and have not the mature judgment and experience to appreciate the probable consequences of their acts.

It might seem from the expression in the Brown Case, "We are not now dealing with a case, as often happens, where a child suddenly emerges from hiding, or from behind an obstruction to vision, and precipitates itself in front of a moving vehicle, thereby creating a sudden emergency," that it is clearly differentiated from that before us. We do not think it is, for in the present case the motorist was confronted with a mass of children and not a single individual. He had stopped his car to allow all that he saw to cross over. He did not, and probably could not, see that one child remained on the left side waiting for the Laborde car to pass, as that car was probably between Anderson and the Moreau child. Anderson did not know, and, as his view was blocked, could not know, that all the children had passed over. He assumed, and wrongly assumed, that they had. Was he justified, as a reasonable man, in view of the care required toward children and their known characteristics, in this assumption? We think not. The testimony shows that the child was struck just as the Anderson truck was passing the Laborde car. We think the reasonably prudent thing to have done would have been for Anderson, who was warned by the situation of the probable presence of more children on the left side of the road, to remain stopped where he was until the Laborde car had passed and cleared his vision of the whole road ahead.

In the case of Albert v. Munch, 141 La. 686, 75 So. 513, L. R. A. 1918A, 240, our Supreme Court has gone even further by holding that: "A person who drives so dangerous a machine as an automobile through the principal street of a large city, upon a bright, dry day, and who sees, at a distance of 150 feet in front of him, two boys, ages 10 and 12 years, respectively, trailing in a soap box wagon behind an ice wagon, should take such precautions in his driving as that, in no event or situation, conceivable to an intelligent man, will he run over and kill the boys."

True, in the present case the driver did not see the boy waiting on the shoulder, but he should have anticipated his presence and that he would run across to join the others.

In Jacoby v. Gallaher, 10 La. App. 42, 120 So. 888, 889, a distinction is clearly drawn between cases arising in cities and those where the children are along a public road in the country. It is said: "In the country the public roadway is shared by vehicles and pedestrians, and there is no impropriety, nor is there any negligence implied, in the practice of country residents walking along the side of the road. The highway is intended for their use as well as for the use of automobiles. Consequently, when a motorist observes pedestrians on the roadway, he must be careful not to injure them. It is his duty to give warning of his approach and to keep his automobile under control. This is true in the case of adults, but in the case of children extraordinary precaution is necessary."

We think defendant's driver failed to use that degree of care required by the law, and that this failure to anticipate the presence and action of the Moreau boy was the proximate cause of the accident.

The child suffered a compound fracture of the large bone of the leg in middle third below the knee, a break of the fibula in the upper part, a greenstick fracture of the clavicle, and bruises about the face. He was carried in the school bus to the office of Dr. Barbin in Marksville, who, with the assistance of Dr. Couvillon, set the bones and sent the boy home. After about the third day, the wound was opened and drainage instituted. On May 30 a second cast was put on, and in July a third. He was taken to Alexandria the second day after the accident and X-rayed. He remained in bed in all about two months, suffering severe pain for the first three or four weeks.

Dr. Barbin, for plaintiff, testifying as to the condition of the leg at the time of trial, said: "I think it's in mighty good condition."

He saw the boy run about two months prior to the trial. He then had a slight limp, which the doctor thinks will disappear.

The parents testify that the boy suffered acutely for some six or eight weeks; that he limps a little and throws his right foot out. No physician corroborates this or indicates any reason therefor.

Dr. Texado, of Alexandria, X-rayed and examined the boy again about ten days before the trial. He considers his recovery complete. The X-ray pictures show good union and alignment, with no shortening of the leg. Dr. H. O. Barker, Rœntgenologist, interprets the pictures as showing good union and alignment. Considering this testimony and the well-known recuperative powers of children, we are not satisfied that any permanent injury is proven.

Plaintiff demands $3,000 for pain and suffering and $4,379.50 for permanent injury. We are of the opinion that $1,200 is the proper amount to allow.

Plaintiff claims further $600.50 for expenses. He has proven $12.50 for a nurse, $10 for extra help, $6 for medicine, and $12.50 ambulance hire. The bill of Dr. Barbin for $539.50 includes $75 for assisting physicians. The doctor admits that his charge of $464.50 is the maximum. Dr. Texado reluctantly says that it is too much and out of line with charges in Alexandria. We think it should be reduced by $100.

For the reasons above assigned, the judgment appealed from is reversed, and judgment is rendered in favor of plaintiff and against defendant in the full sum of $1,680, with 5 per cent. per annum interest thereon from January 12, 1934, until paid, and costs of both courts.