### LEDET v. TOYE BROS. YELLOW CAB CO.*
### No. 16030.

Court of Appeal of Louisiana. Orleans.
April 15, 1935.

John P. Sullivan and David Sessler, both of New Orleans, for appellant.

W. W. Wright, of New Orleans, for appellee.

WESTERFIELD, Judge.

Plaintiff was knocked down and injured by a taxicab owned by the defendant and at the time of the accident driven by one of its employees in the course of his employer's business. As a result of the accident, plaintiff suffered a fracture of two ribs, several cuts and bruises, and remained in the Hotel Dieu for a month, his recuperation being protracted by the fact that he developed pneumonia. He brought this suit claiming $10,000. The case was tried by a jury, which rendered a verdict in plaintiff's favor for $500. Both plaintiff and defendant have appealed.

At the outset we observe that the verdict of the jury and judgment based thereon are incorrect. If the defendant is liable at all, an award of $500 is wholly inadequate for the very serious injuries and protracted and painful suffering which plaintiff endured as a result of the accident.

There were only two eyewitnesses to the accident, at least only two witnesses claimed to have seen the occurrence; the plaintiff, Leo Ledet, and Luther Benton, the driver of the taxicab.

The plaintiff's testimony was obtained with great difficulty. He is seventy-eight years of age, very deaf, and has a cataract on each eye. His mother tongue is French, and he has but a superficial knowledge of the English language. It was only with the aid of an ear trumpet and an interpreter and after the court and counsel visited the scene of the accident, where the plaintiff, by gesture and pantomime, demonstrated his movements prior to the accident, that the court finally succeeded in obtaining his version of the occurrence, which we epitomize as follows:

At about 4 p. m. in the afternoon of March 8, 1933, he left the home of his son-in-law and daughter, No. 1448 North Miro street, be-

---

*Rehearing denied April 29, 1935.

tween Columbus street and Esplanade avenue, where he resides, with the intention of walking to a neighborhood church. He started across North Miro street from the riverside, where his daughter's home is situated, at a point about 100 feet distant and about the same distance from the intersection of North Miro and Esplanade avenue. He had almost completed the crossing, being but a few feet from the lakeside curb, when he was knocked down by a taxicab driven by the defendant's employee.

Luther Benton, the driver of the taxicab, testified that he entered North Miro street from Columbus street driving in the direction of Esplanade avenue, at a speed between eight and ten miles an hour and saw the plaintiff when he started across the street, being at that time some distance away; that he blew his horn, the sound of which appeared to have been heard by the plaintiff, who stopped and waited for him to pass; that just as the taxicab reached a point abreast of plaintiff, plaintiff appeared to change his mind and suddenly started walking toward the taxicab, with the result that he was struck by the left front fender; that with the assistance of a bystander he picked up Ledet, placed him in the cab, and drove him to Hotel Dieu; that there was no traffic on the street at the time, and but for the presence of several children in the middle of the street there was ample opportunity to have stopped his cab, or to have driven to the left and avoided striking Ledet but for Ledet's indecision and hesitancy, which induced him to believe that he intended to wait for the cab to pass.

■ The driver of the taxicab is charged with negligence in that he failed to take the necessary precautions to prevent injuring Ledet after he had observed his presence in the roadway and directly in his path, and that, if the plaintiff was at fault in crossing the street at a point other than at the intersection, such fault did not contribute to the accident because the driver of the taxicab had the last clear chance to avoid it after discerning plaintiff's intention.

In our opinion the case turns upon a question of fact. If the plaintiff's statement of the manner in which the accident happened is correct, the defendant is liable, because there was every opportunity for the driver of the taxicab to stop his car, or to have changed his course. He admits that there were no other vehicles on the street which might have interfered with the maneuvering of his cab and that he saw the plaintiff in ample time to have done so at the speed at which he claims he was traveling. Unless, therefore, the plaintiff, by stopping in his progress across the street, confused Benton and caused him to believe that he intended to wait for the passing of the cab, the defendant is responsible for the consequences of the accident. It is therefore important to consider where Mr. Ledet was when he was struck by the cab.

John Sarpy and Lawrence Mercadel, plaintiff's son-in-law, are the only witnesses other than plaintiff and Benton whose evidence throws any light upon the manner in which the accident happened. Sarpy helped Benton place Ledet in the taxicab. He reached the scene of the accident just after its occurrence and found Ledet lying on the left, or riverside of the cab, about even with the front bumper. He testified that Ledet was put in the cab through the left door, which was the door nearest the riverside of North Miro street, or the side from which Ledet entered the street. Mercadel, with whom the plaintiff resides, also reached the scene just after the accident, and he corroborates Sarpy and says that the right side of the taxicab was about five feet from the lakeside curb, which would place Ledet a considerable distance from that curb. The record, therefore, contains no evidence corroborative of Ledet's statement of the point where the accident happened. On the contrary, what evidence there is tends to confirm the statement of Benton, because, if the accident had occurred when Ledet was near the likeside curb and nearest to the right side of the taxicab, it is very improbable that Ledet, considering his injuries, would have been carried around to the left side of the taxicab before being placed therein, particularly since Ledet is said to have weighed about 200 pounds. In our opinion, Ledet's infirmities were responsible for his unfortunate accident. The probability is that when he faintly heard the horn of the taxicab, he stopped and looked toward the direction of the sound, without being able to see the cab, and, believing that the street was clear and safe for him to cross, started forward again.

■ Industrious counsel for plaintiff directs our attention to the rule that requires a driver of a taxicab to exercise unusual care when children, aged, or infirm persons, or those under the influence of liquor, are observed on the roadway. This rule has been several times recognized in Louisiana. Burvant v. Wolfe, 126 La. 787, 791, 52 So. 1025, 29 L. R. A. (N. S.) 677; Jacoby v. Gallaher, 16 La. App. 42, 120 So. 888, 890; Santos v. Duvic, 16 La. App. 105, 133 So. 399; Brown v. Wade

(La. App.) 145 So. 790; Baptiste v. Mateu (La. App.) 147 So. 731. In Jacoby v. Gallaher, supra, we said:

"The rule that motorists are held to unusual care, where children are concerned, applies also to adults, who, to the knowledge of the driver, possess some infirmity, such as deafness, or impaired sight, or who suffer from some temporary disability such as intoxication. The physical infirmity in one case, and the extreme youth in the other, affect the ability to sense impending danger and to exercise judgment in the emergency by the selection of proper means and observing the necessary precaution to avoid an accident."

In the instant case, however, there was no reason for the taxicab driver to know of the plaintiff's infirmities. As a matter of fact, plaintiff is said to have been a man of unusual vitality and virility and, of course, his defective sight and hearing could not have been manifested to the taxicab driver at a distance, and he is not shown to have had any previous knowledge.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the defendant, Toye Bros. Yellow Cab Company, and against plaintiff, Leo Ledet, dismissing the suit at his cost.

Reversed.