A motor truck owned by the Louisiana Highway Commission and driven by an employee, W.A. Brownfield, who was *Page 374 
acting within the course and scope of his employment, struck and seriously injured Elmer Leon Jamison, a child four years of age, as he was running across U.S. Highway 171 at the hereinafter referred to location in DeSoto Parish, Louisiana.
The unfortunate and regrettable incident occurred about 11:30 o'clock of the morning of August 10, 1938. The child died as a result of his injuries approximately four hours later.
Charging Brownfield's negligent operation of the truck as the sole proximate cause of the accident, the child's father, William A. Jamison, sues in this cause to recover damages for the death. Made defendants are the State of Louisiana, under the authority of Act 47 of 1940, and the Louisiana Department of Highways, successor to the Louisiana Highway Commission. Plaintiff prays for judgment "against the State of Louisiana, through the Louisiana State Department of Highways, ordering the State of Louisiana through the Louisiana State Department of Highways to pay unto your petitioner the full and true sum of Nineteen Thousand One Hundred Seven and 70/100 ($19,107.70) Dollars, together with legal interest thereon from the date of judicial demand until paid."
The defense is that there was no negligence on the part of the driver, Brownfield. Contributory negligence of the child, in view of his tender age, is not pleaded.
The district court rejected the demands of plaintiff and dismissed his suit. He is prosecuting this appeal.
U.S. Highway 171, at and near the place of the accident, runs approximately north and south and is straight. It is surfaced with an 18 foot concrete slab bearing the usual medial black line. Intersecting it on the west side is a graveled road known as Louisiana Highway No. 38.
On the northwest corner of the intersection stands a building in which there is housed and operated a combination business of store, cafe and service station, known by the trade name of Kickapoo. At this place plaintiff, the child's father, worked. The mishap occurred immediately in front of the building.
Six hundred eighty feet north of the point of collision is the crest of a hill, this terminating the slight incline that commences just north of the building and rises eight to ten feet over that distance.
On the morning in question an old model chevrolet coupe, having a wooden pick-up body on its rear instead of the usual metal compartment, was brought to a stop by its driver, Miss Ruth Voss, on the east side of U.S. Highway 171 directly across from Kickapoo. It was parked, heading toward the north, partly on and partly off the concrete surface, there being a disagreement among the witnesses as to its exact coverage of pavement. Riding in the cab part of the coupe, besides the driver, were the following: a sister of Miss Voss, a little girl named McWhinney, and Mrs. W.A. Jamison and her two young sons, one of whom was decedent. Another boy rode in the pick-up part.
Mrs. Jamison descended from the car's right side, shortly after the stop was made, and assisted her two children in getting out. The other occupants of the cab remained seated. During the course of this exiting, the deceased child, who had been away from his father for about three days, remarked, "I want to go see my daddy." Replying, the mother warned: "You just stay here." Then she stood on the east or right side of the car and behind the cab, her children and the boy who had ridden in the back being alongside her, and sought to remove a suit case from the pick-up body.
About this time the highway truck was approaching from the north. It had negotiated the crest of the above-mentioned hill; then it passed a motor vehicle, traveling in the same direction, that was owned and driven by one Clinton Smith and used in his hauling of potatoes; and it was proceeding toward the south in the west or right traffic lane, but with the left wheels near the center line, at a speed of about 25 miles an hour. When it was almost alongside of the parked chevrolet coupe, and as Mrs. Jamison was attempting to secure her suit case, the unfortunate child darted from behind the car and raced toward his father who was standing directly across the highway in the gasoline station servicing an automobile.
Brownfield suddenly and instinctively steered the highway truck to the right, but this maneuver was of no avail in the prevention of the calamity. The child was struck by the vehicle's left front fender at a point about two feet west of the black line, knocking him backward and to the pavement. The truck stopped a short distance away, the various estimates of the *Page 375 
witnesses as to this being from 15 to 50 feet.
It is to be seen from the foregoing discussion that Brownfield was properly using the highway and was traveling at a rate not excessive under ordinary conditions. Plaintiff urges, however, that circumstances existed at the time requiring a much slower speed, his contention being, as set forth in the brief of his counsel, as follows: "Brownfield, the truck driver, being in a position where he had a full view of the scene of the accident from a distance of 680 feet and seeing the parked truck at his left with a woman and children getting out of it and seeing the intersection to the right of the road at or near the location of the truck and seeing a service station and cafe on the side of the road and according to his own testimony being familiar with the road at the scene of the accident, was negligent in not slowing the speed of his truck to such an extent as to enable him to avoid any possible accident."
In support of plaintiff's position there are cited numerous cases, among them being Jacoby v. Gallaher, 10 La.App. 42, 120 So. 888, Fontaine v. Dorsey, 15 La.App. 282, 131 So. 506, Moreau v. Southern Bell Telephone Telegraph Company, La.App., 158 So. 412 and Peperone v. Lee, La.App., 160 So. 467. These authorities announce the doctrine that a motorist, on discovering the presence of small children on the roadside ahead of him, must anticipate childish actions and is required to employ extraordinary care and to operate his vehicle under such control and speed that an accident will be averted.
This doctrine is sound; but we do not believe it applicable to the instant case for the reason, as we appreciate the evidence, neither the mother nor the children were or could have been observed by Brownfield, notwithstanding the good visibility that he had of the locus when several hundred feet away. His failure to see them was due to his view being obstructed by the intervening parked coupe, to the side and near the rear of which they were standing. On this score, Mrs. Jamison said that the car's cab served to prevent one, when standing either on the east side of or behind it, from seeing the road to the north, except at a distant point. Conversely it may be said that a person nearing the car from the north could not see her or the children. In fact three persons in addition to Brownfield, who were located almost as he, testified that observation of them was impossible. These were H.W. Goldsby, seated beside Brownfield, and Clinton Smith and Joe Darhone, occupants of the vehicle that was following the highway truck.
Brownfield was driving on the right side of one of the State's main arteries of traffic on a clear day with good visibility, and nothing existed to warn of or indicate the imminence of a perilous situation demanding extraordinary precaution. Consequently, it is our opinion that he was not required to effect a reduction of his reasonable speed of 25 miles per hour.
Neither do we think that he could have averted the accident after the child emerged from behind the parked car and could be and was observed. The last clear chance was not his. The infant appeared suddenly, the truck then being less than two car lengths away, and ran as fast as possible a distance of only six to nine feet into the path of the approaching machine. The driver's instinctive steering to the right was about all that time permitted. An immediate stopping could not be achieved.
To the entirely disinterested witness Darhone, an occupant of the Clinton Smith vehicle, there was propounded the question: "Was there an interim of time when the driver of the highway truck could have done anything?" He replied: "No, sir, not a thing in the world. If it had been us it would have happened the same as it did to him. The man could not help it." The witness Goldsby, who was riding with Brownfield, testified that there was not sufficient time "to even put your foot on the brake."
Obviously the trial judge concluded that the sad and regrettable occurrence was unavoidable. His conclusion accords with ours.
Furthermore, our feeling about the matter is similar to that so ably expressed by Judge Westerfield in the case of Martinez et al. v. Crusel, La.App., 148 So. 742, when he said: "The case from plaintiffs' standpoint was very ably presented by counsel, who must feel, as we do, the keenest sympathy for the unfortunate parents, plaintiffs herein, in the loss of their little daughter. But however painful and distressing their loss, we can find no legal responsibility in defendant. It is simply a case of vicarious sacrifice upon the altar of *Page 376 
modern progress, as represented by the automobile, the dangerous possibilities of which the infant mind cannot sense."
The judgment must be and it is affirmed.