Plaintiffs, the father and mother of Shirley Jane Doyle, age three years, prosecute this suit to recover for the minor's use and benefits a judgment for damages sustained *Page 646 
by her as result of her running into an automobile driven by James E. Nelson, and for their own account physician's bill and amount expended for medicine needful in alleviating the child's pain and injury. Nelson, the operator of the car, and the Weaks Supply Company, Ltd., his employer, are impleaded as defendants. Judgment against them in solido is prayed for. The company is joined as defendant on the theory that at the time of the accident Nelson was on a business mission for it. No exception was taken to the wife's part in the suit.
The accident occurred in the 1700 block of Trenton Street in the City of West Monroe, Louisiana, near the hour of five o'clock P.M., February 23, 1940, in front of premises then occupied by plaintiffs.
Trenton Street is eighteen feet wide and is hard surfaced. It courses northerly and southerly along the west bank of the Ouachita River at the eastern edge of which is located a concrete sea wall several feet high. Nelson was driving his own car, a Ford coupe, and was traveling southerly. Above and below the locus of the accident, for a block or more, the street is straight. There are no obstructions to vision.
The specific acts of negligence charged against Nelson, and assigned as the proximate cause of the accident, are: Excessive speed; giving no warning of his approach; inattention; and, failure to maintain a proper lookout.
The Weaks Supply Company, Ltd., denies, firstly, that at the time of the accident Nelson was on a mission for it or in any other manner was acting within the scope of his duties and employment, but avers that he was about his own business in which it had no concern; and, secondly, denies that the accident is ascribable to any negligence or carelessness on Nelson's part.
Nelson's answer is a denial of responsibility for the accident and its consequences and an affirmance of freedom of negligence as the or a cause or contributing cause thereof. He also denies that he was on a mission for or that he was acting within the scope of his employment with the Weaks Supply Company, Ltd., when the accident occurred. Further pleading, this defendant says:
That immediately prior to the time the accident occurred, as he approached at a moderate rate of speed, Shirley Jane Doyle left the front yard of her parents' home and crossed to the east side of Trenton Street and was there standing beside a boy (afterward learned to be her brother) twelve years of age; that he observed said boy holding the child by the hand, apparently to prevent her from running into the street; that after observing this situation and noticing other children near by he retarded the speed of his car to a rate of between ten and fifteen miles per hour; that after the front end of his car passed the two children, Shirley Jane suddenly left the boy holding her, and ran into the street and against the side of this defendant's car, striking it near the center of the left side; that the impact of the collision threw the child to the pavement and her right leg was run over by the left rear wheel; that the car was stopped within a distance of less than twenty feet and that the accident happened solely from the child's imprudence and carelessness.
Plaintiffs' demands were rejected and their suit dismissed with costs. They prosecute this appeal.
It is obvious that the Weaks Supply Company, Ltd. was improperly sued. The testimony is to one accord that Nelson had concluded his day's service at the company's place of business in the City of Monroe and had left for the day; that at the time of the accident he was driving his own car and was on his way to purchase some sandwiches for himself and family.
As the child's tender age renders her incapable of contributory negligence, to escape liability for the consequences of the accident, entire freedom of negligence of any character as a or the cause, or contributing cause thereof on the part of Nelson must be shown. The trial judge reached the conclusion that the testimony sustained Nelson's defense of freedom of negligence.
Defendant testified that when about one block north of the locus of the accident he observed several children playing in the street thereabout; that he then was driving approximately twenty-five miles per hour; that he saw plaintiffs' little girl run across the street to her brother and he immediately reduced speed to about fifteen miles per hour and the street became clear; that he saw the boy reach out and take hold of the child's hand and when this occurred he testified that he "speeded up a little bit to get by and, when I had practically gotten by her, she ran into my car." He says that at that time he was traveling *Page 647 
fifteen miles per hour. He admits that he applied the brakes and that the car skidded a distance unknown to him. He also testified that the child's body was not over five or ten feet behind his car when it stopped and that he did not drive more than twenty feet after the child ran into the car.
Mr. J.C. Moak and his wife were in a car traveling southerly on Trenton Street about one-half block behind defendant's car. Moak testified that he saw the children in the street and noticed that defendant reduced his speed presumably for that reason; that he saw the little girl jerk her hand from her brother's and run into the car; that at the time defendant's car, as best he could tell, was going at a speed of ten or fifteen miles per hour "when he started to pick up speed a little bit when the child ran into the side of his car." Again he said: "* * * the best I could judge he gave his car a little gas as he got near and then the child ran into the side of his car." Moak further testified that he reduced his own car's speed when he observed defendant doing so. Mrs. Moak's testimony corroborates that of her husband.
Plaintiffs' son, Charles, age thirteen, returning from school walked on the top of the sea wall for a considerable distance and had descended therefrom in front of his parents' home immediately prior to his sister running across the street to him. Doubtless his presence prompted the child to cross over and join him. Dalhart Doyle, plaintiffs' other son, age twelve, was standing on the lawn of his parents' home when the accident occurred. Both boys testified that they did not see the car until a moment before the accident and that the child was struck by the front part of the left front fender at the time traveling at a speed of approximately sixty miles per hour. These boys are in error as to the part of the car that contacted the child. Had it been struck as they say, her body would have been knocked forward. We are satisfied that the child ran into the side of the car as alleged by defendant. We are also satisfied that at the time of the accident defendant's car was not going at a speed of sixty miles per hour, but that its speed was then considerably in excess of fifteen miles per hour. Convincing proof of this is found in the fact that the car skidded thirty-seven feet before it was stopped.
It is highly probable that the car was moving at a speed between thirty and forty miles per hour. At a speed of thirty miles per hour under favorable road conditions it should have stopped at not more than 35.3 feet after the brakes took effect. See 14 Tulane Law Review, 503.
If the car traveled only twenty feet after the child ran into it, as defendant testified, it follows that it skidded seventeen feet before contact with the child. The brakes were forcefully applied as their screaming was heard by persons inside their homes near by.
Defendant does not contend that he sounded the car's horn at any time after seeing the children one block away and no one testified that he did so. Had he done so there is more than a possibility the accident would not have occurred. The boy on the east side of the street could have heard the sound and taken necessary steps to prevent the child from running into the street.
Our conclusion is that when defendant observed the children playing in the street about a block away, he reduced his car's speed to some extent, but as soon as the little girl had crossed over and joined her brother, and the other children had left the street, he assumed that it was safe for him to resume his former speed and did so; that he saw the child break loose from the boy and again start across the street and at that juncture he applied the brakes in an effort to avert the impending accident, but too late.
In these circumstances can it be said that defendant acted prudently? Was he free from negligence in thus acting? We do not think so. If the child had been alone and had attempted to cross the street after being observed and was hurt by defendant it would scarcely be argued by anyone that he would be free of negligence in operating the car as he did. Is the situation materially different because this thirteen year old boy caught the child's hand after she had first rushed across the street and afterward, without being aware of the car's near presence, allowed her to undertake the second crossing? Did defendant act as a cautious, reasonable and prudent person should have acted in view of immediately preceding events and the circumstances then existing? We have to answer both questions in the negative. The existing circumstances required of defendant that he exercise the maximum of care and caution while driving through the locus; that he reduce the speed of his car and maintain such efficient control of it as to make impossible *Page 648 
an accident from the heedlessness of any of the children. He certainly did not discharge the duty, in these respects, which the law imposed upon him as the operator of the car. Had he been traveling at a speed of ten miles per hour the accident would not have occurred.
The degree of care exacted of a motorist who observes children, especially those of tender age, upon or beside a street or highway upon which he is traveling, to the end that, regardless of childish imprudence and propensities no harm will befall them because of the car's operation, is of the highest. He, in such circumstances, has not the right to assume that such children will act prudently and govern their movements by the same or near the same caution, as an adult would do. Rather, he should assume, out of an abundance of caution, that they will not act prudently.
Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., vol. 2, §§ 1493, 1494, pages 523 et seq., lays down rules uniformly prevailing in nearly all if not all jurisdictions governing the duty of motorists when seeing children on or beside the road or street on which they are traveling. He says:
"Where an automobile driver sees a child in a place of danger, or has reason to apprehend that it might run into a place of danger, and has sufficient time to stop his car if under proper control, it is his duty to exercise such care as would be reasonably necessary to avoid a collision."
"A driver of an automobile seeing children in or near street should take proper steps for their protection if under circumstances he should anticipate that they will get in his way.
"A person driving on a city street through a crowd of children is required to exercise the greatest care possible for their safety, and it has been held that the running of an automobile on such a street through a crowd of playful noisy children, at a speed of 5 or 6 miles an hour, is an act of gross negligence.
"Where children are on the sidewalk and corners, it is the duty of a motorist to drive his machine at such a rate of speed as will give him control thereof in an emergency."
"The driver of a motor vehicle, who sees children near the sidewalk not on the traveled part of the highway, observably oblivious to his approach, and whose actions show plainly that they are on the point of running into the street across his pathway, is under a duty to sound a warning to them."
The facts in Jacoby et ux. v. Gallaher, 10 La.App. 42, 43, 120 So. 888, are quite similar to those of the present case save that the accident involved in that case happened on a highway in the country. There, the defendant, traveling at an illegal rate of speed, saw the child which was run over and killed, walking along the highway, holding the hand of a brother. The child suddenly "broke loose" from the brother and ran across the road in front of defendant's car. Recovery was allowed. It is true, however, as said in this case, the rule generally prevailing requires a greater degree of prudence and care of the motorist in the country than when traveling on the streets of towns and cities.
In Brown v. Wade, La.App., 145 So. 790, decided by this court, the child was injured on a highway. Pertinent jurisprudence and text book authorities are cited at length.
In Touris v. Fairmont Creamery Company, 228 App. Div. 569, 240 N YS. 225, the accident occurred in the City of Buffalo, New York. The court therein held:
"If child was in plain sight of driver of automobile while the latter was traveling 85 feet and no warning of approach of car was given and its speed was not slackened, jury would be justified in finding that driver was negligent."
In Ferrand et ux. v. W.H. Cook Co. et al., 146 La. 17, 83 So. 362, it was held:
"The failure of the driver of a motorcar to slacken speed or give warning of the presence of the car to a small boy, who was racing close beside it after picking up something in the street, must be deemed negligence."
Plaintiffs' child was knocked unconscious. The femur of her right leg was fractured. She was promptly carried to a sanitarium in the City of Monroe and remained therein for three days. She was treated by Dr. H.S. Kuhn. The limb was placed in a cast which was worn seven weeks. She remained in bed all told about three months. Thereafter, for several weeks, she had to use crutches to get about. In July, 1940, five months after the accident, the leg was in satisfactory condition with no prospect for any permanent disability. *Page 649 
There is a paucity of testimony touching the duration and character of pain suffered by the child, but doubtless she experienced considerable pain and a great deal of discomfort from wearing the cast, remaining in bed, using the crutches and regaining normal use of the leg.
Mr. Doyle expended $15 for medicine and is obligated to pay Dr. Kuhn his bill of $100. We think the child entitled to recover Seven Hundred Fifty and No/100 ($750) Dollars.
For the reasons herein assigned, the judgment appealed from, in so far as it rejects plaintiffs' demand against the Weaks Supply Company, Ltd., is affirmed; and for said reasons the judgment in so far as it rejects demand against defendant, James E. Nelson, is reversed, annulled and set aside and there is now judgment in favor of plaintiff, Charles O. Doyle, and against said James E. Nelson for the sum of One Hundred Fifteen and No/100 ($115) Dollars with legal interest from judicial demand. And there is further judgment in favor of Charles O. Doyle for the use and benefit of his minor daughter, Shirley Jane Doyle, and against said James E. Nelson in the sum of Seven Hundred Fifty and No/100 ($750) Dollars, with legal interest thereon from judicial demand, and costs of suit.