The plaintiffs, Albert J. Hughes and his wife, Ruby West Hughes, have filed this suit individually and on behalf of their minor child, Mattie Francis Hughes, in which they pray for judgment for hospital and doctor bills, pain and mental anguish to their minor child and for mental anguish and worry, all occasioned as a result of the child being struck by an automobile owned and operated by the defendant Eldridge Gill on the 16th day of September, 1948 at approximately 11:30 a.m. on Whittington Drive, which is a street located in the city of Oakdale, Louisiana.
Plaintiffs alleged that their minor child, who on the date of the accident was three years of age, was on the south side of Whittington Drive immediately across the street from their home and standing near a garage belonging to one Clay Stanley; that the child was walking backwards across the road and that, although there was a curve in this street to the south which begins near Stanley's garage, there is no obstruction which would have prevented the defendant, who at the time was driving west on said street from seeing the *Page 537 
road ahead of him for a distance of 50 to 75 feet. It is further alleged that this accident happened on the left or south side of Whittington Drive which is the opposite lane of traffic for any motor vehicle traveling west as was the defendant in this case, and that as the road is approximately 14 feet in width there was ample room for the defendant's automobile to have passed to the right or north side of the child had he remained on his proper side of the road. The plaintiffs charged the defendant with not keeping a proper lookout and with knowledge that at the point of the accident there was a residential area and children customarily played along this street.
The defendant entered a general denial and alleged that Whittington Drive made a sudden turn to the south opposite the Stanley garage, and that there was a large tree on the left hand side of the road close to the Stanley garage, and that the garage and tree completely obstructed the view of any one driving west around this curve; that as defendant reached the garage corner and tree, the minor child of the plaintiffs was playing on the south side of the street and was being called home across the street by some adult person living in the house of the plaintiff; that in response to this call the child suddenly ran into the front of defendant's car and that immediately when the child came into defendant's view he applied his brakes, which were in good shape, but could not avoid striking the child, although he was traveling at a slow rate of speed and his car came to a stop within three feet. The defendant further plead that the parents of the minor child were contributorily negligent in allowing this small child "with no sense of judgment to play alone and on the opposite side of the street from its home."
After trial, the learned judge of the District Court in short sufficient oral reasons dictated to the stenographer held that it had been proven that the defendant had failed to maintain a proper lookout, and in his reasons stated that the plaintiff, presumably the father, was entitled to the sum of $267 for hospital and doctor bills incurred as the result of the accident. The District Court further stated that the child was entitled to $100 for pain and mental anguish and that the plaintiffs, Albert Hughes and his wife, Ruby West Hughes, were entitled to $100 for mental anguish and worry. The formal judgment as drawn is in favor of Albert J. Hughes and against the defendant Eldridge Gill in the full sum of $467 plus legal interest from date of judicial demand until paid and for all costs of the suit.
Defendant has appealed from this judgment.
The preponderance of the testimony establishes the fact that on the date in question the defendant had just left his home, which is located four houses down or east of the scene of the accident, and was accompanied by one of his children; that he was driving his automobile at a slow rate of speed, not more than 12 to 15 miles per hour, in a westerly direction along Whittington Drive, a graveled street which is approximately 14 to 16 feet in width at the point of the accident. There is a garage located on the south side of this street at or near the place that the child was struck, and at the corner of the garage is a large tree. This street, sometimes referred to in the testimony as a road, curves to the south slightly to the east of this garage. It is the defendant's contention that this child suddenly darted out from the western end of this garage and that his view was obstructed by the garage and the tree until he got practically opposite the point where the child darted into the road. The defendant testified that he did not see the child until it was practically under his left front fender, and that all he had time to do was to jerk his front wheels to the right and apply his brakes. It is proven that his car stopped within approximately three feet and that the child was struck approximately in the center of the road or street, which would be approximately 7 to 8 feet from the south line of Whittington Drive. The defendant admits that he knew children played along this street and in this neighborhood.
The record shows that during the trial a blackboard was used of which we do not have the benefit but which the District Court did have before it, and practically all of the witnesses in the case testified by either making sketches on the blackboard or *Page 538 
using the one already made by some other witness.
Plaintiffs contend that the child was playing on the south side of Whittington Drive and a distance of 20 feet west of the Stanley garage at the time she started to cross the street toward her home, and that the defendant could and should have seen this child from a point fifty feet east of the Stanley garage, which would make a total distance of 70 feet, when the child was approximately 7 to 9 feet south of the south line of Whittington Drive, and that as the defendant admitted that he struck the child in the center of the street or a distance of 7 to 8 feet, the defendant should have seen this child while it was traversing the entire distance of 14 to 17 feet.
The District Judge, as stated, found that had the defendant been keeping the proper lookout, under the testimony in this case he should have seen the child during the time that it traveled the seven feet into the street and approximately eight feet south of the street, or a distance of 15 feet, and that had he seen the child he could have avoided the accident, but as he did not see the child until it had traveled the entire distance to the center of the road or approximately 15 feet that he was not keeping a proper lookout and is therefore liable. Opposed to the testimony of the defendant that his view was obstructed we have in the record the testimony of the plaintiff and three other witnesses that the defendant should have seen this child when he was 70 feet east of the point of the accident; that the curve was of such a gradual nature that at a point 50 feet east of the Stanley garage the view was unobstructed at a distance of 20 feet west of the garage and as far as 7 to 9 feet south of the south line of Whittington Drive. The Judge of the District Court accepted this testimony and we believe he was correct in doing so. One witness testified that Mrs. Maxine Doyle, who was a witness called on behalf of the plaintiff, had called the little Hughes girl from across the street to come home and that is why she had started to cross the street at the time of the accident. Mrs. Doyle denied that she called the child but states that she was living at the Hughes home at this time and on the morning of the accident she went out on the front porch of the Hughes home to see about her child and at that time she did not know that the little Hughes girl was playing across the street. She stated that she did not call the child but that the child started running across the street and looking back and that she realized that the Gill car was not going to stop and that the child was not going to stop, in other words, that the child was going to be hit and it frightened her and she hollered, "Watch that car."
The defendant cites the case of Jacoby et al. v. Gallaher, 10 La. App. 42, 120 So. 888, and also the case of Cavanaugh v. Blaum, 12 La. App. 173, 125 So. 160. If the facts were as contended by the defendant then these cases would be applicable and decisive, but in this present case the facts are convincing that if the defendant had been looking or keeping a proper lookout on this street or road, which he knew was occupied by families with children and that the children played along the street, he would have seen this little three year old child in time to easily have avoided the accident by the application of his brakes or by driving his car to the extreme right hand side of this street or road. It is equally true under the well-settled jurisprudence that if he did not see the child but should have seen her at a distance which would have enabled him to avoid the accident, he is equally responsible.
In the present case he should have seen this child in time to avoid the accident and, therefore, we agree with the Trial Judge that he was not keeping a proper lookout and is liable.
The learned judge of the District Court in his reasons for judgment stated that the plaintiffs, Albert J. Hughes and his wife, Ruby West Hughes, were entitled to $100 for mental anguish and worry. This amount is included in the total amount of the judgment of $467, however, under the jurisprudence, the father and mother are not entitled to collect for mental anguish and worry as a result of the injuries to their minor child. In the case of Davies v. Consolidated Underwriters, La. App., *Page 539 14 So.2d 494, 504, the Court held: "Plaintiffs in the original action claimed $750.00 each as damages for mental anguish by reason of the injuries to their child. It is well established in this State that one person cannot recover damages for mental suffering as a result of injuries to the person of another. Seligman v. Holladay, La. App., 154 So. 481."
While we believe in other respects that the formal judgment should have followed the wording of the judge as given in his reasons for judgment and that it, therefore, should have been in favor of the plaintiff Albert J. Hughes in the full sum of $267, which were the hospital and medical bills for the child, and there should have been further judgment in favor of the plaintiff, Albert J. Hughes, for and on behalf of the child,Mattie Francis Hughes, in the amount of $100, (Emphasis ours) we are confronted solely with the matter of reviewing it, and the plaintiff did not answer the appeal that was taken by the defendant and we are, therefore, powerless to disturb the judgment in this respect. See Jones v. Chicago Mill Lumber Co., La. App., 15 So.2d 826, 827, wherein it was held: "* * * Defendant did not appeal nor did it answer appellant's appeal. Therefore, the judgment may not be amended in its favor, notwithstanding, in brief, it is argued and urged that plaintiff has been paid all compensation due him. Code of Practice, Article 592. See also Giardina v. D'Antoni, La. App.,1 So.2d 706, and cases therein cited; Nurdin v. Bouanchaud, Sheriff et al., 152 La. 853, 94 So. 420; State v. Becker, 30 La. Ann. 682, in which it was held: 'Any change in the judgment of the lower court, desired by the appellee, must be asked for by him in a regular answer to the appeal. It is not sufficient to demand it merely in his brief.' "
It is, therefore, ordered that the judgment of the District Court be amended by reducing the amount thereof to $367 plus legal interest thereon from date of judicial demand until paid, and as thus amended that it be affirmed. The costs of this appeal are to be paid by the plaintiff-appellee.