HARDY, Judge.
This is a tort action in which plaintiff seeks to recover damages for the death of her minor son who was accidentally struck and killed by a car driven by defendant, Charley Jarnevich. Joined as a defendant was Southern Farm Bureau Casualty Insurance Company as liability insurer of Jarnevich. From a judgment in favor of plaintiff and against the defendant insurer in the principal sum of $5,000, which was the limit of the insurer’s liability, the latter has appealed.
For some unexplained reason, notwithstanding the fact that plaintiff named Jarn-evich as a defendant and prayed for judgment against him jointly and in solido with his insurer, it does not appear that any answer was filed on behalf of Jarnevich, nor that any judgment was rendered against him, nor that he is a party to this appeal.
Before this court counsel for defendant urges error in the judgment below on the grounds that (1) defendant’s insured, Jarne-vich, was free from negligence; (2) that decedent was an illegitimate child, for whose death plaintiff is not entitled to recover, and (3) that the amount of the judgment is excessive.
The facts surrounding the unfortunate accident show that at or about the hour of noon on February 21, 1957, at a point on Louisiana Highway 4, several miles south of Columbia, Louisiana, a car, driven in a northerly direction by Charley Jarnevich, struck the minor, Charles David Walker, approximately three years ten months of age, as he was crossing the highway, inflicting injuries which caused almost instant death. At the time of the accident the weather was clear, the roadway dry and the highway was straight and level. Just prior to the accident the decedent and his sister, who was some five or six years of age, ran from a turnrow in a field east of the highway, immediately to the right of Jarnevich’s lane of travel, through an open gate and onto the highway. The little girl, *772 who was running slightly ahead of her younger brother, ran across the highway to a mail box situated on the opposite side thereof. The little boy, Charles David Walker, according to the testimony of several of the witnesses, first stopped on the shoulder of the road, in close proximity to the paved slab, then began to run across the highway and was struck by the Jarne-vich car when he had negotiated only about three-fourths of the width of the right or east lane of the highway. Jarnevich perceived the presence of the children near the highway at a time when he was some two hundred yards distant, sounded his horn, slowed his speed to approximately forty-five miles per hour, saw the little girl run across the highway, and testified that he observed no indication on the part of the little boy of an intention to run across the highway. When this action was undertaken Jarnevich immediately locked his brakes, which took effect only a few feet before the left front of the car struck the child. The body of the unfortunate little boy was carried on the fender of the car for a distance of some ninety-six feet before it fell to the highway, after which Jarnevich brought his car to a gradual stop.
Preceding the Jarnevich car, at a distance of approximately 200 yards, was another vehicle driven by Mr. James Maxwell, accompanied by his wife and child. Both Mr. and Mrs. Maxwell observed the two children as they ran from the turnrow toward the gate and Mrs. Maxwell testified :
“ * * * when I saw these children toward the gate, I just thought, well if they are running that fast, and if he is very close, then there is a possibility that he might hit them, then I turned around, and he did.”
On the issue of negligence counsel for defendant argues that Jarnevich’s actions in sounding his horn and reducing his speed to forty-five miles per hour was a reasonable precaution, and that he could not have known, nor anticipated, that the little boy, after looking directly at the approaching automobile and standing perfectly still, would suddenly rush out into the highway in the path of his car.
Analyzing the facts, it seems clear that Jarnevich could and should have anticipated the peril of little Charles David Walker, even if, as he testified, the boy was momentarily standing still on the edge of the highway. Particularly is this true in consideration of the fact that the little girl had already run across the highway. The normal expectation would be that the little boy would attempt to follow the course taken by the other child, and, obviously, he was of such an age that the exercise of reasonable judgment could not be expected.
We think that the conclusion as to the eminent probability of an accident was almost inescapable at the time. Mrs. Maxwell, whose car had safely passed at a time before the children reached the road, according to her testimony, anticipated the occurrence of the accident and looked back to make observation. The time element is another factor which, in itself, testifies against Jarnevich’s failure to take every possible precaution. It is abundantly evident that the two children ran from the field through the gate onto the shoulder and across the road within the period of time required by the Jarnevich car, traveling at forty-five miles per hour, to negotiate a distance of some two hundred yards. In other words, the entire action of the tragedy took place within a space of less than ten seconds, yet, during this period, and despite the obvious danger, Jarnevich took no precaution save the blowing of his horn and slightly reducing his speed of travel.
It is impossible to establish, follow or apply any uniform rule as to the nature and degree of care that must be exercised by a motorist perceiving the presence of children on or near a public highway, and, as has been many times observ *773 ed, the facts of each case must determine the question of liability. In the instant, case we are in complete accord with the conclusions of the district judge, as stated in his written opinion. Jarnevich, upon perceiving the presence of the children, should have anticipated the possibility, indeed the probability, of childish actions and should have exercised extraordinary care in the operation of his vehicle. His failure to exercise such care constitutes negligence which must be concluded to be the sole and proximate cause of the accident. This conclusion is substantiated by numerous cases, among which we particularly note Stamps v. Henderson, La. App., 25 So.2d 305; Doyle v. Nelson, La. App., 11 So.2d 645; Guillory v. Horecky, 185 La. 21, 168 So. 481; Moreau v. Southern Bell Telephone & Telegraph Co., La. App., 158 So. 412; Brown v. Wade, La. App., 145 So. 790.
Learned counsel for defendant particularly cities Jenkins v. Firemen’s Insurance Co., La.App., 83 So.2d 494, and Hudson v. Byers, La.App., 73 So.2d 596. We have carefully re-examined the opinions in the cited cases, both of which were decided by this court, and are impressed with the fact that the facts adduced therein are not analogous to those which have been established in the instant case.
On the issue of illegitimacy, it is argued that plaintiff’s husband, Levi Walker, from whom she was separated by mutual agreement in written statements introduced by stipulation in this record, denied his paternity of the deceased minor, Charles David Walker. This fact is undisputed, but it is completely without probative force or value. It was established on trial of this case that plaintiff and Levi Walker were married on April 16, 1953, and that Charles David Walker was born June 17, 1953, during the marriage, of which fact Levi Walker was entirely cognizant at the time. It is also clear that Levi Walker, despite the lapse of almost four years following the hirth of the child had never taken any action in the effort to disavow his paternity. For obvious reasons the attempt to establish the illegitimacy of a child is hedged about with strict provisions and specific requirements. We think the issue which has been raised in the instant case is conclusively disposed by the provisions of Article 190 of the LSA-Civil Code which reads, in part, as follows:
“The husband can not contest the legitimacy of the child born previous to the one hundred eightieth day of marriage in the following cases:
■“1. If he was acquainted with the circumstance of his wife being pregnant previously to the marriage.”
In the instant case it is conclusively shown that Levi Walker was entirely familiar with the fact that this plaintiff was pregnant at the time of their marriage and that the child was born some sixty days following the celebration of the marriage. Under this circumstance, Levi Walker was forever barred from contesting the legitimacy of the child.
While we think it unnecessary to pursue this subject, we note the pronouncement' in the opinion of the court in Succession of Saloy, 44 La.Ann. 433, 10 So. 872, 876:
“Where, aware of the circumstances under which he might have exercised the right of repudiation, the husband, who is the sovereign arbiter of his honor, fails to do so, the door is forever closed, and no one can after-wards assert a right strictly personal to him.”
Pertinent to the same principle are McNeely v. McNeely, 47 La.Ann. 1321, 1324, 17 So. 928; Ezidore v. Cureau’s Heirs, 113 La. 839, 37 So. 773; Favre v. Celotex Company, La.App., 139 So. 904, all of which cases, together with others, were ably considered in the opinion of Judge Janvier in Jenkins v. Aetna Casualty & Surety Co., La.App., 158 So. 217.
Finally, we come to a consideration of the question of quantum. Plaintiff’s peti *774 tion itemized her claims for damages as follows:
“The testimony in this case, shows that the deceased child was normal, healthy, three-year-old boy.”
“Loss of love and affection $ 7,500.00
“Loss of future support 7,500.00
“Burial expense 300.00
“Total $15,300.00“
The opinion of the district judge makes only one brief comment upon the matter of damages, as follows:
The court concluded that an award of $5,000, which, coincidentally, is the maximum amount provided by the policy of insurance, was proper, and, accordingly, rendered judgment for such sum.
The record does not contain any evidence which would serve to support plaintiff’s claim for loss of future support. Considering the tender age of decedent and the numerous factors which are requisite to a justification of an item of this nature, we think any award in response to such a claim would be unsupportably speculative.
The only evidence in the record as to burial expenses consists of plaintiff's testimony that she turned over all the money she had, amounting to $85, to her father as a contribution toward the burial expense of her child. This testimony was not controverted and, therefore, must be accepted and the amount allowed.
Certain facts bearing upon the existence of feelings of love and affection between plaintiff and her deceased son are uncon-trovertibly established in the record before us. Plaintiff lived with her father and mother; a marital domicile with her husband, Levi Walker, was never established; her first child was born out of wedlock; when the decedent, Charles David Walker, was about a year old plaintiff left him with her parents and did not return to their home except upon the occasion of the child’s funeral and, again, following the institution of this suit. During the interim plaintiff worked in Monroe, in Chicago and in California. The only testimony as to any feelings of love and affection is found in the following extract from the testimony of plaintiff:
“Q. How was the child’s health, was it in good health ? A. Good.
“Q. Was it a bright child? A. Yes, he was.
“Q. How was your feeling for it, did you love it? A. Well, yes, I loved them both.
“Q. Did you take care of them when you were with them ? A. I did.
“Q. What have you been doing since you were away, to see after them and support them? A. I have been working, sending clothes and different things, taking care of them.”
The record as to the relation between this mother and child is convincing and the conclusions are inescapable. The mother, plaintiff herein, gave no indication of any particular love and affection, and it is clear that she never regarded either of her children as being her primary responsibility. The children had a good home with their grandparents, who looked after them, provided for their needs and, quite obviously, served and stood in the place of parents. The mother, on the other hand, never made any effort to provide a home for the children, and after the little boy, Charles, was approximately a year old, so far as the record discloses, she had never even visited him.
We are keenly aware of the futility of any attempt to establish a minimum standard of affection or to fix a dollar valuation upon love, but we cannot, under the facts of the instant case, subscribe to the maximum award which has been made. It is regrettable that the right of action in this case was not vested in the grandparents instead of the mother, for then, indeed, there would have existed a real opportunity *775 for the establishment of reciprocal feelings of love and affection.
Unfortunately, an examination of authorities discloses only a paucity of details in the opinions of our courts on this question of love and affection. In our own experience we have rarely had occasion to make elaborate comment upon this issue. As a result, our jurisprudence is wanting in adequately detailed expressions which might serve as acceptable precedent. However, our review of the jurisprudence has disclosed some observations which are pertinent to this point.
In the very recent case of Andrus v. White, La.App., 101 So.2d 7, 10, the court declared:
“In fixing the amount of the award, regard should be had for the closeness of the ties between the parties, the degree of love and affection * * *.”
In Brooks v. State Farm Mutual Automobile Ins. Co., La.App., 91 So.2d 403, 410, we said:
“As we have many times observed, there is no rule, in cases of this nature, which serves as a guide. There are only a few well established and recognized principles of human relationships which are subject to consideration. The impossibility of making any sort of adequate compensation in terms of money for the loss of the invaluable intangibles of love and affection is beyond question.
“In the recent case of Himes v. Avinger, La.App., 85 So.2d 304, this court approved a jury award of $10,000 to each of the surviving parents of a fifteen-year old boy. In the instant case the proof on this point is not nearly as extensive and convincing as that which was adduced in the case cited. However, the young parents in this case have lost their only son, apparently a bright, healthy, normal, affectionate child, loving and loved.”
In the case of Engeron v. Le Blanc, La. App., 29 So.2d 497, the opinion commented on the testimony of the minor daughter of the decedent as reflecting the devotion and attachment between father and child.
In Keith v. Royal Indemnity Co., La.App., 90 So.2d 534, 539, our opinion referred to the necessity on the part of surviving children for
“ * * * the love, care, support and companionship of those dearest to them, who guided in close association a happy and contented family.”
Joyner v. Williams, La.App., 35 So.2d 812, 817, involved an action by the mother and father of a sixteen-year-old son who was almost instantly killed by an automobile. In the opinion of the court Judge Taliaferro commented upon certain pertinent facts — the infelicity of the marital relations which resulted in the spouses living apart for several years; the fact that it had been two or three years since the plaintiff father last visited the family; that the plaintiff father made no contribution to the family’s financial support but extended some help to his son when he visited the father, and the Judge concluded his consideration of this point with the following observation:
“The foregoing resume of his conduct should convince anyone- that his love and affection for the dead boy and his interest in him was not nearly so great as it should have been. We believe that $1,000.00 will adequately compensate him.”
The several pronouncements from the opinions of our courts in the cited cases have the effect of enunciating, at least by implication, certain requirements of proof in connection with the establishment of a basis of valuation consonant with the loss of the imponderable qualities of love and affection.
Consideration of the record in the instant case leads us to the conclusion that there is no real evidence of the existence *776 of any close relationship between this plaintiff and her deceased child, and, indeed, such could hardly be expected in view of their separation over a period of approximately three years, which period comprised three-fourths of the entire life span of the child. There is no evidence of any deep feeling of love and affection, nor is there justification for the conclusion that the lack of the evidence of these qualities was due to circumstances over which the mother had no control.
We are convinced that the award in the instant case is grossly excessive and, in our opinion, the sum of $2,000 would represent a generous evaluation of damages in favor of plaintiff in connection with this item.
For the reasons assigned the judgment appealed from is amended by reducing the amount thereof to the principal sum of $2,085, and, as amended, it is affirmed at appellant’s cost.