292 So.2d 885 (1974)
Victor Stewart SEALS
v.
Nanette JACOBS.
No. 9737.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
Rehearing Denied April 22, 1974.
France W. Watts, III, Franklinton, for appellant.
John N. Gallaspy, and Michael J. Paduda, Jr., Bogalusa, for appellee.
Before LOTTINGER, BLANCHE and de la HOUSSAYE, JJ.
de la HOUSSAYE, Judge.
On December 1, 1969, petitioner herein, Victor Stewart Seals, filed a petition against defendant, Nanette Jacobs, to annul their purported marriage of October 20, 1969. Subsequently, the defendant filed a reconventional demand asking for a separation from bed and board on the grounds of abandonment.
Later, on April 21, 1970, Victor Stewart Seals filed a petition in the matter entitled "Victor Stewart Seals vs. Nanette Jacobs and her minor daughter, Stacey Danielle Seals" to disavow the paternity of the said child. An attorney ad hoc was appointed to represent the said minor child and a general denial was filed on her behalf and on behalf of her mother. These two suits were consolidated for the purposes of trial, however, separate judgments were rendered. The suit for disavowal was also numbered 9737 on the docket of this Court.
*886 Following trial below the Lower Court rendered a judgment in favor of Nanette Jacobs granting her the separation from bed and board on the grounds of abandonment, together with $20.00 per week child support; and, in the suit for disavowal, the demands of petitioner were rejected. From these two judgments, Victor Stewart Seals has taken an appeal.
The uncontroverted testimony shows that petitioner and defendant in the two suits took part in a marriage ceremony on October 20, 1969. The testimony is also uncontradicted in that subsequent to the ceremony the parties never lived together as man and wife.
On April 8, 1970, defendant gave birth to a baby girl, Stacey Danielle Seals, some 169 days after the marriage ceremony. Petitioner was not present at the birth of the child, nor did he sign the birth certificate. The testimony of Seals is to the effect that he did not know for sure whether defendant was pregnant or not. The defendant herself admitted that she never convinced Seals that she was pregnant, however, she, as well as her father and mother, told Seals of the pregnancy. Petitioner testified that shortly prior to the marriage ceremony Nanette's father threatened to blow petitioner's head off if he did not marry his daughter.
There are, therefore, four questions to be resolved, namely:
(1) Should the child be disavowed?
(2) Should the marriage be dissolved by annulment?
(3) Is a legal separation appropriate here?
(4) Is the award of child support justified?
Article 190 of the Louisiana Revised Civil Code provides as follows:
"The husband can not contest the legitimacy of the child born previous to the one hundred and eightieth day of marriage, in the following cases:
1. If he was acquainted with the circumstances of his wife being pregnant previously to the marriage.
2. If he was present at the registering of the birth or baptism of the child and signed the same, or if not knowing how to sign, he put his ordinary mark to it, in presence of two witnesses."
We feel that the record clearly shows that the petitioner was aware of the pregnancy of Nanette prior to the marriage ceremony. He himself admitted that Nanette, her mother and father, all told him of the pregnancy, however, he claims that he did not believe them. He further claims that he was coerced into marrying her because of her pregnancy. Such being the case, how can he now claim that he was unaware of her condition.
As set forth in the statutes and as perpetuated in the jurisprudence, the policy of this state has been to protect the infant children against attacks upon their paternity. Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619, see also Walker v. Jarnevich, La.App., 102 So.2d 770 wherein the Court said:
"In the instant case it is conclusively shown that Levi Walker was entirely familiar with the fact that this plaintiff was pregnant at the time of their marriage and that the child was born some sixty days following the celebration of the marriage. Under this circumstance, Levi Walker was forever barred from contesting the legitimacy of the child."
The Lower Court was correct in refusing to disavow the paternity of the child.
With regard to the annulment of the marriage, petitioner, who was a 21 or 22 year old grown man, claimed that he was going with Nanette, that they had sexual relations, but that it was in September when they had sexual relations, not in July when she apparently got pregnant.
*887 A period of several days elapsed between the time she first advised him that she was pregnant and the time that they went to the Court House where the marriage ceremony took place. Of course it would be natural that the parents of the girl would have shown some interest in the forthcoming marriage, but Nanette's father emphatically denied the threat to blow petitioner's head off. Victor had several days to think this matter over, and even if he was approached by the girl's father, Victor had ample time to seek help or to make himself scarce, or otherwise to prevent what he now claims to be a coerced marriage.
The marriage itself took place in the Court House. It was performed by a Justice of the Peace after the parties thereto walked by the Sheriff's Office and after they had stood outside the District Judge's Office while a waiver was signed. The witnesses to the marriage testified to the effect that the parties thereto did not appear to be "Jubilant" and that they did not embrace. The record discloses that following the ceremony they never lived together.
In its statement of fact, the Lower Court said:
"Here they come to the Courthouse. They get the Judge to sign the seventy-two hour waiver, the waiver of the production of the birth certificates, which we have signed routinely every day of our lives.
The mother goes in and gets the Judge to sign it. Then they get a Justice of the Peace who happens to work in the Clerk's office.
They go down to the Clerk's Office and get the license. Then the Justice of the Peace comes upstairs and performs the ceremony. Briefly, as those type ceremonies are conducted, it is still apparently a valid ceremony within the law.
They are married. Now the fact that they never lived togetherhe went his way and she went hersis evidence in his favor that this was certainly not a normal situation. It is just not the way people do.
But, by the same token, to prove duress, force, doesn't he have to avail himself to the opportunity that was obvious and apparent to get out of the trap he was in?"
The facts in Stakelum v. Terral, La. App., 126 So.2d 689 are strikingly similar to the ones before this Court. The plaintiff and defendant in that case were students attending medical school in New Orleans, both in their early twenties. Having fallen in love, and believing he would marry her, the young lady engaged in pre-marital sexual intercourse with petitioner. Following her announcement of pregnancy, petitioner promised to marry her but several times postponed the ceremony. Apparently she was very near the point of going into labor when they finally were married in Mississippi by a Justice of the Peace.
The young man thereafter departed from the scene just as happened in the instant case and they never lived together subsequent to the marriage ceremony. When she appealed to him for financial assistance, he responded with a suit to annul the marriage.
Upon trial of that matter petitioner insisted that he had been threatened with a pistol, the Court did not believe the testimony. The justice of the peace testified that during the ceremony everything seemed normal, except that he did observe that after the wedding the parties did not embrace or kiss, and "he remarked that he did not know whether the ceremony was a wedding or a wake." As in the instant case, petitioner attempted to impute her pregnancy to someone else.
In that case the Court said:
"The basic law controlling this case is found in LSA-Civil Code Arts. 91 and 110 to the effect that no marriage is valid when extorted by violence; and that marriages celebrated without the free consent of married persons may be annulled *888 by the one whose free consent was not given, provided the marriage has not been freely consummated after celebration.
We can find no case in our jurisprudence which holds that entreaties to and pursuasion of, the apparent father of their relative's unborn child to do the manly and decent thing by marrying the pregnant mother, is the violence and threats contemplated by the codal articles."
We feel that the petitioner has failed to sustain his burden of proving duress or coercion to such an extent as to justify the annulment of this marriage.
On the demand of the wife for a separation from bed and board on the ground of "abandonment", we must be governed by the Articles of the Civil Code and the Jurisprudence of this State. Each case, however, must stand, or fall, on its own particular set of facts.
The facts of this case pertaining to the wife's action for a separation from bed and board are not disputed. The record reflects that on the day of the marriage, the bride and her parents left their home and drove to the groom's home, where the bride's mother drove with him to the Court House, and the bride and her father followed them. Immediately after the ceremony was performed, the husband and wife parted at the Court House; the groom returning to his home, accompanied by his wife's mother, and followed, in the other car, by the bride and her father, who picked up the wife's mother at the husband's home and continued on to their home. Thereafter, the parties never established a matrimonial domicile, nor ever lived together.
The record herein is devoid of any evidence showing that the husband asked his wife to come and live with him, or that he forbade or refused to allow her to do so. Nor does the record reflect that the wife offered to go with her husband and live with him, or that she even asked him to allow her to do so, or indeed what if any plans were made to live together. The newly married couple simply parted ways, apparently by mutual consent, impliedly if not directly, expressed.
On the facts, the Trial Court granted the wife's reconventional demand for a separation from bed and board on the grounds of abandonment. In so doing, we find he erred. The following authorities are pertinent to our decision.
C.C. Art. 138
"Separation from bed and board may be claimed reciprocally for the following causes: (5) of the abandonment of the husband by his wife or the wife by her husband."
C.C. Art. 143
"Separation grounded on abandonment by one of the married persons can be admitted only in the case where he or she has withdrawn himself or herself from the common dwelling without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed; provided, however, that separation grounded on abandonment may be the object of a reconventional demand in any suit for separation from bed and board." (Emphasis supplied.)
C.C. Art. 145
"In all suits filed hereafter, whether or not there has been an answer filed, the abandonment with which the husband or wife is charged shall be proved as any other fact in a civil suit and such case shall be set and tried as any other suit."
"Wife, who instituted suit for a judicial separation on ground of husband's alleged abandonment, has burden of establishing that husband left without lawful cause." Maynor v. Maynor, 234 So. *889 2d 426 (La.App. 1st Cir.Ct. 1970); Spring v. Mendoza, 171 La. 461, 131 So. 299; Whitener v. Whitener, 269 So.2d 923 (La.App. 1st Ct. 1972); Armentor v. Gondoon, 184 La. 922, 168 So. 102.
"Living apart of husband and wife by mutual agreement does not constitute "abandonment"; in order for there to be an "abandonment" there must be a voluntary and unjustified separation by one spouse without the voluntary agreement of the other and with the intent of terminating the marital relationship." Palama v. Palama, 277 So.2d 468 (La.App. 4th Cir.); See also Belou v. Belou, La. App., 231 So.2d 580, writ refused 235 So.2d 97; Sciortino v. Sciortino, La. App., 188 So.2d 224, writ refused 249 La. 726, 190 So.2d 237.
From the foregoing authorities, we conclude that in order to prevail in her action for a separation from bed and board, the wife must allege and prove that (1) there was a withdrawal from the common dwelling; (2) that the withdrawal was without a lawful cause and (3) that her spouse has constantly refused to return and live with her. C.C. Art. 143 supra. She must also bear the burden of proof of these facts by a preponderance of the evidence. (C.C. Art. 145 and Maynor v. Maynor, supra.) We further conclude that a voluntary and mutually desired separation by both spouses is not sufficient, under our law, to entitle one of the spouses to a separation from bed and board, on the grounds of abandonment.
Since the facts in this case clearly establish that no common dwelling was ever established by the parties, there could be no withdrawal therefrom by the husband. Further, the record is devoid of any evidence adduced by the wife to establish that her husband left her, without lawful cause, as required by Art. 143. She has thus failed to discharge the burden of proof required of her by our law.
It would appear, from the evidence in this record, or perhaps more properly, from the lack of evidence, on this question, that this young couple simply married and then parted company, apparently by mutual consent, tacitly expressed. We conclude that under these facts, and the cited authorities, the wife is not entitled to a Judgment of Separation on the grounds of abandonment.
For the reasons hereinabove assigned, we Affirm the Judgment of the Trial Court rejecting the plaintiff's demands for a nullity of his marriage and for disavowal of his child we Reverse the Judgment of the Trial Court granting unto defendant Nanette Jacobs, a Judgment of Separation from Bed and Board and for child support, all costs of this appeal to be borne by appellant.
Affirmed in part: reversed in part.
LOTTINGER, Judge (dissents).
I respectfully dissent from the majority where they reverse the judgment of the Trial Court granting unto defendant, Nanette Jacobs, a judgment of Separation from Bed and Board on the grounds of abandonment and for child support.
There is no question but that the parties did not mutually agree to separate. The question for determination here is, who left who without a lawful cause, and did he or she continue and/or refuse to live together or make no effort toward reconciliation. Was there mutual fault to the same degree or did the fault of one outweigh the fault of the other. These are the principal issues to be determined here. The majority herein is holding that there was a mutual consent tacitly expressed but I interpret the facts, which are not in dispute, in a different light. As a matter of fact, I agree fully with the Lower Court that the plaintiff left his wife without a lawful cause and has refused to reconcile their differences and has no intention of reconciliation.
In addition to the law and jurisprudence cited by the majority, I am of the opinion *890 that the following is applicable to the facts and issues involved herein.
C.C. Art. 120
"The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and conditions."
The marital obligation of the wife to live with her husband presupposes that the husband will maintain a residence to which the wife can go in good conscience and is welcomed. But an exception to the rule, many times also recognized in our jurisprudence, it that a wife is authorized to acquire a separate domicile for herself when she is abandoned or is compelled by reason of ill treatment to leave her husband. Bush v. Bush (S.Ct.1957) 232 La. 747, 95 So.2d 298; Moseley v. Moseley (La.App. 1967) La. App., 200 So.2d 771.
"Husband's departure, under mutual agreement, from home is not sufficient of itself to support action for separation predicated on abandonment but husband's continued refusal to return to home does constitute `abandonment'."
"Husband who desires to nullify the wife's suit for separation based on abandonment can return to the matrimonial domicile." Schoen v. Schoen (La.App. 1972) 259 So.2d 626.
"Where husband left matrimonial domicile and wife filed suit for separation from bed and board on grounds of `abandonment,' and after husband was served with citation he did not try to reconcile differences and made no effort toward reconciliation, acts and attitude of husband manifested his intention not to return to matrimonial domicile, and constituted `abandonment' by husband, so as to entitle wife to separation from bed and board." Belou v. Belou, (App.1970) 231 So.2d 580, writ refused 256 La. 70, 235 So.2d 97.
"Where wife sued husband for separation from bed and board and husband set up a reconventional demand for like decree and trial court found that both parties were at fault but that fault of husband outweighed that of wife, wife was entitled to decree of separation from bed and board and to judgment for alimony pendente lite." Eals v. Swan (S.Ct. 1952) 221 La. 329, 59 So.2d 409; Callahan v. Callais (Sup.Ct.1954) 224 La. 901, 71 So.2d 320; Hinton v. Hinton (App. 1966), La.App., 189 So.2d 11; Gayle v. Gayle (App.1965), 181 So.2d 72.
Now there is no dispute as to the facts of this case. After the marriage ceremony, the plaintiff got in his car and went home and the wife got in her father's car and returned to the father's home. They never lived together as man and wife. At the request of the plaintiff, Nanette's mother rode back to the home of the plaintiff in his car. Nanette has lived with her parents since the ceremony. Nanette's mother testified in court that on the way home from the ceremony, the plaintiff told her that "he was not ready for marriage". "He was just not ready to live together", which statement was never refuted by the plaintiff. The mother further testified that Nanette said and did nothing that would have given the plaintiff cause to leave and refuse to live with her. This was likewise confirmed by Nanette herself and never refuted by the plaintiff. The plaintiff has never attempted or offered to come back to his wife. He never attempted or offered to establish a common dwelling. Nanette further testified that some time before the first lawsuit, the plaintiff called her and asked if he could get a lawyer to draw up some papers releasing him of all financial responsibilities, that he would then give her and the baby all the money she ever wanted but that he just didn't want to be *891 forced to do it, and she told him she would not sign anything and it was then that the first suit was filed to annul the marriage. The defendant then answered this suit and reconvened asking for a separation from bed and board on the grounds of abandonment. If he had wanted to reconcile their differences, he could have returned to the wife but to the contrary, the petitioner manifested his intentions not to return to his wife by filing another suit to disavow the paternity of his child.
The majority makes much of the fact of the lack of evidence in this record regarding the issue of who was at fault and who left who. There is an old proverb that says "action speaks louder than words" and said in another way, "By their fruit, you shall know them". I believe this record speaks for itself and the actions of the plaintiff are loud and clear.
The majority makes much of the fact that the wife must allege and prove that (1) there was a withdrawal from the common dwelling; (2) that the withdrawal was without a lawful cause and (3) that her spouse has constantly refused to return and live with her. There is no question about that requirement but when the wife has never been offered or furnished a "common dwelling" as is required by law to which the wife can go in good conscience and is welcomed, what is she to do? Of course, according to our jurisprudence as hereinabove cited, she is authorized to acquire a separate domicile for herself when she is abandoned or is compelled by reason of ill treatment to leave her husband. The Lower Court had the opportunity of seeing and listening to the plaintiff and defendant on the witness chair and came to the conclusion that the withdrawal of the plaintiff was without cause and that he has constantly refused to return and live with his wife.
The facts in the instant case clearly show that the petitioner refused to live or co-habit with defendant following the marriage ceremony. He left defendant at the court house and went his own way. There was no mutual agreement as to the separation and he left defendant without a lawful cause and has refused to return to his wife. After the petitioner was served with the reconventional demand of defendant asking for a separation from bed and board on the grounds of abandonment, petitioner made no effort toward reconciliation; as a matter of fact the petitioner manifested his intentions not to return to his wife by filing another suit to disavow the paternity of his child.
Now in the instant case there was no common dwelling because the husband failed and refused to provide one according to the provisions hereinabove cited. Petitioner left defendant without a lawful cause and not having a common dwelling, defendant or plaintiff in reconvention was forced to acquire a separate domicile for herself. There is no question but that the action of the petitioner herein in leaving the defendant at the court house after the marriage was voluntary and unjustified on his part and without approval of the defendant and with the full intent of petitioner to terminating the marital relationship. If the wife was at fault to some degree, there is no question that the fault of the husband outweighed that of the wife.
The Lower Court found that petitioner had abandoned his wife and we certainly cannot say it is manifestly erroneous. She is therefore entitled to a separation from bed and board. Certainly his minor child is entitled to child support.
For the reasons hereinabove assigned, I respectfully dissent from the majority.