STOULIG, Judge.
Defendant, Mrs. Vilma Yarbrough Kuchta, has appealed two judgments which (1) awarded her husband, John Kuchta, a separation a mensa et thoro on the ground of abandonment and rejected her reconven-tional demand for separation based on cruel treatment; and (2) reduced her monthly award of alimony pendente lite from $1,000 to $500.
We first consider appellant’s contention that the record does not support a judgment in plaintiff’s favor. What constitutes an abandonment is defined by LSA-C.C. art. 143:
“Separation grounded on abandonment by one of the parties can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed; provided, however, that separation grounded on abandonment may be the object of a reconven- *328 tional demand in any suit for separation from bed and board.”
Under LSA-C.C. art. 145, abandonment must be proven with the same preponderance of evidence as any other fact in a civil suit. Thus one alleging- abandonment must prove that the other spouse left their common dwelling without lawful cause and by her actions or declarations does not intend to return and resume marital relations. See Maynor v. Maynor, 234 So.2d 426 (La.App. 1st Cir. 1970).
This court stated in Palama v. Palama, 277 So.2d 468 (La.App.1973), that a voluntary separation approved by both spouses does not constitute abandonment, for the requisites of C.C. art. 143 are only met when the leaving is voluntary and unjustified by one spouse with the intent to terminate the marriage, which actions are opposed by the other. This article further contemplates the complaining spouse is willing to accept the return of the other marital partner to the family dwelling for the resumption of normal marital relations. Sciortino v. Sciortino, 188 So.2d 224 (La.App. 4th Cir. 1966).
In this case the evidence fails to establish plaintiff is entitled to a judgment of separation from bed and board based on abandonment. His testimony and his expeditious filing of this lawsuit amply demonstrate his unwillingness to continue the marital relationship with Mrs. Kuchta. She moved from the matrimonial domicile on October 25, 1972 and the following morning at 9 a. m. his petition for separation based on the ground of abandonment was filed. If we accept his statement he had no knowledge his wife was leaving before her departure, we find his rapid recourse to judicial proceedings remarkable.
It is apparent his separation from his wife was not only voluntary but welcome. To illustrate we cite an excerpt of plaintiffs testimony:
“Q And since she has left, have you ever asked her to return ?
A No.
Q Now, if she volunteered to come back, would you let her come back ?
MR. FITZMAURICE:
I object, your Honor. This is immaterial.
THE WITNESS:
Not no, but ‘Hell No!’ ”
We next determine whether the wife’s allegation of cruel treatment has merit. Both litigants and their children testified the marriage was, at best, an armed truce for more than ten years before Mrs. Kuch-ta left. Plaintiff spent very little time at home, shared no social activities with his wife and barely spoke to her. During this period, plaintiff and his wife discontinued sex relations, she occupying the marital bedroom, while he slept on the sofa.
According to Mrs. Kuchta, the discord began when her husband told her he loved a Miss Pat Crowley. Plaintiff claims she is a business associate and denied making this statement. In fact he claimed his association with Miss Crowley was limited to business. Miss Crowley’s testimony established she and plaintiff went on fishing trips on the weekend, always accompanied by one or more of the Kuchta children.
It is apparent plaintiff preferred Miss Crowley’s company to that of his wife on weekends which, if nothing else, was a rejection that subjected defendant to hurt, embarrassment and humiliation. Plaintiff admitted he had not taken his wife out in the last five years.
Plaintiff’s inconsideration of his wife is evidenced by the manner in which he moved the matrimonial domicile from Har-ahan to Belle Chasse. Although he purchased a home in Belle Chasse on August 30, 1972 without consulting his wife, he did not even advise her of this fact until October 5, 1972, two days before he planned to move into it. She testified her neighbor *329 learned she was going to move before she knew. The night before they left, plaintiff told his wife she could move in with them but only on his terms. He then took possession of their joint bankbooks, > checkbook and the payroll check in her handbag. To add to the indignity to which defendant was subjected, plaintiff in effect placed his 19-year-old daughter in charge of their Belle Chasse household, while her mother was still residing there. Mr. Kuchta did not dispute or contradict these statements.
Plaintiff’s attitude toward his wife is one of indifference, disdain, and outright hostility of such a magnitude that it is apparent the prospect of reestablishing a rapport sufficient to return to a harmonious marital relationship is neither encouraging nor favorable. His actions fit what has been described by the Supreme Court as sufficient grounds for separation based on cruel treatment in ■ Krauss v. Krauss, 163 La. 218, 111 So. 683 (1927). We quote the language applicable:
“The courts will look, not so much to the originating cause of the cruel treatment, but to the nature and character of the treatment itself in determining the question as to whether it. amounts to such cruelty as to warrant a separation.
******
In Corpus Juris, vol. 19, p. 49, it is stated:
‘It was formerly thought that actual bodily harm, or apprehension thereof, must be shown to authorize granting a divorce on the ground of cruelty, and this doctrine seems still to prevail in a few jurisdictions; but this view has been generally repudiated and the modern doctrine is that any unwarranted conduct by either spouse which causes the other mental suffering of sufficient degree constitutes such cruelty as will authorize a divorce.’
And where the conduct of' a spouse is calculated permanently to destroy the peace of mind and happiness of the other so as utterly to destroy the objects of matrimony, a divorce may be granted on the ground of cruelty.
Our own court, in Olberding v. Gohres, 107 La. 715, 717, 31 So. 1028, 1029, said:
‘A husband may be guilty of outrages towards his wife of character such as to render their living together insupportable, without raising his hands against her.
‘His conduct may be the very refinement of cruelty, without either force or blows.’
We must hold therefore that any unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other, or such as in any other manner utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted or threatened.” 111 So. at 685.
We think the facts that Mr. Kuchta does not rebut are sufficient to support a separation in. his wife’s favor based on cruelty. See also McWaters v. McWaters, 209 So. 2d 163 (La.App. 1st Cir. 1968).
Finally we consider the counter rules to increase and decrease, based upon a change in circumstances, the previously awarded alimony pendente lite of $1,000 per month.
A review of the evidence adduced in support of the wife’s rule to increase her alimony does not establish any significant change in Mrs. Kuchta’s circumstances which would warrant the granting of an increase and therefore her rule must be dismissed.
In connection with the husband’s rule co reduce, the evidence reflects that at the time alimony of $1,000 was set by the trial court, his employment contract provided for a monthly salary of $4,000 and a bonus of 1 percent of the gross sales of his employer, which resulted in an annual earning *330 for 1972 of approximately $159,000. The record further reflects although the husband earned some $81,000 in salary and bonuses from January through June 1973, that due to the fact the parent corporation of his employer was operating as a debtor in possession under the Bankruptcy Act, his contract of employment was amended, effective July 31 (one week before the trial of this rule), to reduce his monthly salary to $2,000 and delete all bonus commissions.
Thus, at the time of the trial of the rule to decrease, there was a substantial change in the husband’s financial position. He testified that his net monthly take-home pay amounted to $1,400 and that he had no other income.
We are mindful of the fact that the term “means” in C.C. art. 148 governing the awarding of alimony pendente lite has been construed to refer to the husband’s resources and not necessarily his income. Bowsky v. Silverman, 184 La. 977, 168 So. 121 (1936); King v. King, 255 So.2d 225 (La.App. 1st Cir. 1971). Though Mr. Kuchta did earn some $81,000 in the first six months of that year, there is no evidence of any resources that he possesses or will possess except his monthly salary of $2,000. We find the evidence amply supports the trial judge’s adjustment to $500 per month of the alimony pendente lite awarded to the wife.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment on the original demand in favor of the defendant, Mrs. Vilma Yarbrough Kuchta, and against the plaintiff, John Kuchta, dismissing said demand, and that there be judgment, on the reconventional demand, in favor of plaintiff in reconvention, Mrs. Vilma Yarbrough Kuchta, and against the defendant in reconvention, John Kuchta, granting her a separation from bed and board. It is further ordered that the judgment decreasing to $500 per month the alimony pendente lite awarded to Mrs. Vilma Yarbrough Kuchta be affirmed. Costs of this appeal are to be borne equally by the parties.
Affirmed in part; reversed in part; and rendered.