340 So.2d 378 (1976)
Emogene Jones CHAMBLEE
v.
Charles Burr CHAMBLEE.
No. 7683.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1976.
Rehearing Denied December 14, 1976.
*379 Leydecker, Bates & Hand, Gerald J. Leydecker and Paul J. Galuszka, New Orleans, for plaintiff-appellee.
Martin A. Welp, New Orleans, for defendant-appellant.
Before LEMMON, MORIAL and BEER, JJ.
BEER, Judge.
Emogene Jones Chamblee, plaintiff-appellee, commenced this litigation with a petition seeking separation from bed and board from defendant-appellant, Charles Burr Chamblee. As grounds therefor, she alleged abandonment without legal cause. Subsequently, an amending and supplemental petition was filed alleging that Mr. Chamblee "was dating another woman" prior to the physical separation which caused Mrs. Chamblee "undue embarrassment, humiliation, and mental anguish." A second supplemental and amending petition was filed with further particularized allegations of mental cruelty stemming from "many occasions" when Mr. Chamblee would stay away from the matrimonial domicile. In his answer, Mr. Chamblee denied Mrs. Chamblee's allegations, and prayed for a dismissal of her suit. Following various discovery procedures, there was a hearing on May 29, 1975, which resulted in the awarding of alimony pendente lite and, on October 9, trial on the merits was concluded. On October 17, 1975, final *380 judgment decreeing a separation a mensa et thoro was rendered in favor of Mrs. Chamblee and against Mr. Chamblee, and, concurrently, a prematurely filed application for new trial was refused.[1] Mr. Chamblee devolutively appeals, seeking reversal of the trial court judgment and rendition of judgment in his favor.
Emogene J. Chamblee testified to numerous instances (starting in September, 1974) when her husband left the house without explanation, to return at odd hours the next morning. For example, Mrs. Chamblee testified that Mr. Chamblee left the domicile on Christmas Eve, 1974, at about 5:00 p. m. and returned at about 3:30 a. m. Christmas Day. She further testified that on the day before her husband abandoned the matrimonial residence, she had followed him to a grocery store. Asked about this event, she reported:
Q. And what did you see there?
A. I saw him take one of the cashiers in my car, the car that I used. They left together in my car about 8:00, or 8:15.
Q. Do you know who that cashier is?
A. Patricia Gomez Turner. I had been over there several times and had seen her . . .
She contends that Mr. Chamblee returned home late that night and left the next morning (January 26, 1975) after packing a suitcase. Mrs. Chamblee described the prevailing marital climate existent during this event:
Q. Did you ask him "Where are you going," or anything?
A. No, because our marriage had deteriorated so badly to this point I really didn't care.
Charles B. Chamblee testified that he and Mrs. Chamblee were married on May 25, 1963. He is a retiree, formerly employed by the U.S. Immigration Border Patrol. In describing the events which culminated in his departure from their home, Mr. Chamblee testified that on the morning of January 25, 1975, he played golf, then brought his old car around to a gas station, and, thereafter, returned to the Woodland West Country Club late that afternoon where he encountered his wife and her sister at the bar. He related that at the time she "appeared to be inebriated." Subsequently, Mr. Chamblee returned to their home and waited for her but to no avail since apparently Mrs. Chamblee went directly to her daughter's house for a planned dinner to which Mr. and Mrs. Chamblee had been previously invited. Mr. Chamblee drove to the apartment of Mrs. Chamblee's daughter, but did not stay for dinner. He reports:
"At this time, I was really upset because I had been waiting for her at the house and she didn't show up and they were already eating and I just kind of felt like I wasn't wanted. So, I said `No, thank you, I will go out and eat.' And she says `I don't want the son of a bitch to eat here anyhow."
Mr. Chamblee further testified that he thought his wife was "loaded" at the time. Leaving the home of Mrs. Chamblee's daughter, he went to the Buck Forty-Nine Restaurant and had a drink, drove to the *381 gas station to check again on the estimate of repairs to his car and then went to a place called the Schivaro Room and to have another drink. Thereafter, he stopped at the A & P to purchase certain toilet articles and checked out through the line where Patricia Turner was the "checker." Chamblee denied that Patricia Turner accompanied him when he departed the store, contending that she was still working at the time. He denied ever going out with her on social occasions.
When he returned to the apartment of Mrs. Chamblee's daughter at about 8:45 p. m. that same evening, Mrs. Chamblee had left, so he went home. Mr. Chamblee testified that his wife returned home after midnight and described her as being "really drunk."
As lawful cause for his departure from the common dwelling, Mr. Chamblee testified that Mrs. Chamblee's drinking problem and her personal threats to harm him caused him to leave:
"I felt that someone was going to get hurt and probably it would be me because of instances that happened in the past that I didn't feel like my life was safe with her."
Mrs. Chamblee denies ever having any arguments with her husband concerning heavy drinking on her part.
Patricia Turner corroborates Chamblee's testimony in the respect that she did not leave the A & P store with him. She denies ever being in a car with Mr. Chamblee except on one occasionwhen he acted as a pall bearer and chauffeur at the burial of her father. She averred that Chamblee was a friend of the family.
Abandonment, properly proven and without lawful cause, supports a judgment of separation from bed and board. The Louisiana Civil Code describes the burden of proof when abandonment is alleged:
Art. 143 Separation grounded on abandonment by one of the parties can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed; provided, however, that separation grounded on abandonment may be the object of a reconventional demand in any suit for separation from bed and board.
Art. 145 In all suits filed hereafter, whether or not there has been an answer filed, the abandonment with which the husband or wife is charged shall be proved as any other fact in a civil suit and such case shall be set and tried as any other suit.
Recently, we decided the thus far unreported case of Gilberti v. Gilberti, La. App., 338 So.2d 971, which provides that:
"The party seeking a legal separation on the grounds of abandonment must prove the elements thereof. Boudreaux v. Tanner, 295 So.2d 511 (La.App. 1st Cir., 1974). Once proven, the burden then shifts to the opposing party to prove the alleged abandonment was done with lawful cause or adequate provocation. Farkas v. Farkas, 264 So.2d 721 (La.App. 1st Cir., 1972)."
The case at bar raises the issue of whether or not the mere act of "leaving" the common dwelling is proof of the elements constituting abandonment sufficient for the burden to shift.
The jurisprudence appears to be in conflict. Some cases clearly hold that all three codal elements must be proven in order to be successful in any separation suit grounded on abandonment. Kuchta v. Kuchta, 296 So.2d 326 (La.App. 4th Cir., 1974), app. den. La., 299 So.2d 801; Boudreaux v. Boudreaux, 295 So.2d 511 (La.App. 1st Cir., 1974); James v. James, 325 So.2d 762 (La. App. 1st Cir., 1976). Contrarily, other jurisprudence supports Mrs. Chamblee's position to the effect that once the mere incident of "leaving" is proven, the burden shifts to the opposing spouse to justify his leaving. Stalnaker v. Stalnaker, 204 So.2d 779 (La. App. 2nd Cir., 1967); Kleinpeter v. McCulloh, 312 So.2d 146 (La.App. 1st Cir., 1975); Farkas v. Farkas, 264 So.2d 721 (La.App. *382 1st Cir., 1972); Legleu v. Legleu, 187 So.2d 6 (La.App. 1st Cir., 1966).
The case at bar appears to be similar to Belou v. Belou, 231 So.2d 580 (La.App. 4th Cir., 1970), writs ref. 256 La. 70, 235 So.2d 97, where we noted:
"In the present case the husband having admitted that he withdrew from the matrimonial domicile there remains for our consideration only the question of whether he `constantly refused to return' to the domicile."
In Belou, the only evidence submitted was that the husband left the matrimonial domicile. We observed:
"The parties separated on September 12, 1968. Plaintiff filed her suit some eight days later on September 20, 1968. This fact alone would not be enough to satisfy this court that the husband did not intend to return. This would be particularly true in this case because during the four months of this marriage each party had left the domicile once prior to this occasion. However, after the husband was served with citation in this matter he made no attempt to contact his wife to advise her of any intention to return, nor did he try to reconcile their differences. Three weeks after the suit was filed his wife contacted him to discuss with him her plans to get a divorce. The record does not indicate that he at that point made any effort toward reconciliation. Defendant continued to pay the rent on the apartment, the telephone bill and the utility bill but made no attempt to see his wife. It is the court's opinion that these acts and the attitude of defendant after suit was filed for the separation manifested his intention not to return to the matrimonial domicile."
Here, the record does not provide an acceptable basis upon which any conclusion can be reached beyond establishing the fact that Mr. Chamblee left the matrimonial domicile.
We are of the view that a prima facie case which shifts the burden to the defendant must be affirmatively proven as to all three elements required by Article 143. When this is accomplished, then the burden will shift to the opposing party to show that the alleged abandonment was for lawful cause. But, a mere showing on the part of the complaining party that the other spouse has withdrawn from the matrimonial domicile is not, standing alone, sufficient to trigger the burden-shifting process.
Very often in these complex times, the decision to leave the matrimonial domicile is the result of a bilateral understanding on the part of the spouses.[2] See Loyd v. Loyd, 336 So.2d 912 (La.App. 2nd Cir., 1976). To shift the burden to the "leaving" spouse to justify his or her simple act of departure puts the departing spouse in a posture not contemplated by the Code. The jurisprudence seems to have wandered from the Code's clear intendment. We believe that the clear requirements imposed by the redactors should be followed inasmuch as they provide for a showing of more than the physical act of leaving the matrimonial domicile. There must be affirmative proof that the "leaving" spouse withdrew without lawful cause and constantly refused to return. LSA-C.C. Art. 143; Azar v. Azar, 185 So.2d 113 (La.App. 4th Cir., 1966); Sciortino v. Sciortino, 188 So.2d 224 (La.App. 4th Cir., 1966), writ ref. 249 La. 726, 190 So.2d 237; Kuchta v. Kuchta, 296 So.2d 326 (La.App. 4th Cir., 1974), appl. den. La., 299 So.2d 801; Seals v. Jacobs, 292 So.2d 885 (La.App. 1st Cir., 1974); Boudreaux v. Boudreaux, 295 So.2d 511 (La. App. 1st Cir., 1974); James v. James, 325 So.2d 762 (La.App. 1st Cir., 1976); Broughton v. Broughton, 188 So.2d 720 (La.App. 2nd Cir., 1966).
*383 Other than the parties, Louise Woodroof and Patricia Turner were the only witnesses called. They partially corroborated Mr. Chamblee's testimony but what they said was of no probative value insofar as proof of abandonment was concerned. Hence, Mr. Chamblee further contends that Mrs. Chamblee was awarded judgment of separation a mensa et thoro solely on her own contradicted and uncorroborated testimony. However, the trial judge apparently concluded, as a matter of fact, that Mr. Chamblee's departure was substantiated by the petition and testimony of Mrs. Chamblee as well as the testimonial evidence of Mr. Chamblee himself. Even assuming Mr. Chamblee's testimony failed to corroborate the testimony of Mrs. Chamblee, we have held heretofore that the unsupported testimony of a party in a divorce or separation suit as against the unsupported testimony of the other party may constitute a preponderance of the evidence provided that it is believed by the trier of the case. Seeling v. Seeling, 133 So.2d 161 (La.App. 4th Cir., 1961).
The trial judge's conclusions, inferred from the testimony of witnesses whose credibility he must determine, will be accorded substantial weight on review. Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581 (1947). Likewise, in the most recent case of Morris v. Morris, 336 So.2d 254 (La.App. 1st Cir., 1976), the court observed:
"The trial judge viewed the witnesses and evaluated their credibility. Especially in domestic relations cases, his determinations of fact are entitled to great weight on appeal and will not be disturbed unless manifest error is shown."
Accordingly, we do affirm the finding that Mr. Chamblee departed from the matrimonial domicile. But, on this record, we are unable to also conclude that failure to return without lawful cause can be, then and there, imputed to him, only because he did, indeed, depart. In light of the conflicting jurisprudence reviewed hereinabove, we feel obliged, in fairness, to remand this case to permit Mrs. Chamblee to adduce further evidence on the issue of abandonment. Since the appeal was limited to a challenge of the trial court's finding of abandonment, the decision constitutes a res judicata barrier to any further consideration on the cruelty issue. Each party shall bear its own costs of this appeal.
AFFIRMED IN PART AND, IN PART, REMANDED FOR FURTHER PROCEEDINGS.
LEMMON, J., filed a specially concurring opinion.
LEMMON, Judge (concurring).
I agree with the result and the basic reasoning of the majority opinion. I submit this concurring opinion to state my somewhat different approach in analyzing the necessity of remand and my disagreement on a technical point.
Analysis of Merits
To be entitled to a judgment of separation based on abandonment, the wife as plaintiff had the burden of proving that her husband withdrew from their domicile without lawful cause and that he unjustifiably refused to return.
As to the husband's withdrawal from the matrimonial domicile on January 26, 1975 the wife testified that their marriage had already deteriorated beyond repair because (at least over the prior four-month period) he had stayed away from home at night until late hours and had withdrawn large sums of money from their savings, all without explanation.[1] The husband did not specifically deny this conduct, but in effect blamed his actions and the general deterioration of their marriage on his wife's excessive drinking.
Thus the parties basically agreed things had reached a point so that they could no *384 longer live together happily, and both in effect consented to separate. However, each presented a different version of facts bearing on the visceral issue of whose fault brought about the deterioration of their relationship. Stated otherwise in terms of elements of proof, the parties both agreed that the husband withdrew and that neither desired that he should return; they disagreed as to whose fault caused the ultimate mutual decision to live separately.
Presented with this conflicting testimony and with the fact that neither party's version was corroborated with other evidence, the trial judge could have simply accepted the wife's version and rendered judgment in her favor. Or he could have rejected the wife's version, either on insufficiency of her evidence or on acceptance of the husband's testimony (or perhaps on a finding of a simple incompatibility), and could have dismissed her suit. (Since the husband had not filed a reconventional demand or an affirmative defense to the wife's suit for separation, he had no burden to prove anything.) Nevertheless, the trial judge granted judgment in favor of the wife, specifically finding in oral reasons for judgment that the "burden has not been carried".
With due deference to a trial judge for whom I have great respect, and mindful that appellate courts should not discourage submission of reasons for judgment or findings of fact, I cannot affirm a judgment based on this reasoning under the circumstances of this case.[2] The conflicting versions must be resolved before a decision can be properly rendered.
Since an appellate court should not undertake an independent determination of the merits of a case on the record when a credibility evaluation is essential to the decision, the proper result is to remand the case for the necessary credibility determination.
Shifting of the Burden of Proof
The burden of proof never shifts. The burden of proof is always on the plaintiff (or plaintiff in reconvention or third party plaintiff) to prove all of the essential elements necessary to support the demand for relief.[3]
Loose wording in some decisions would lead one to believe that the plaintiff in a separation suit based on abandonment need only prove the other spouse withdrew from the domicile, at which point the burden of proof then shifts to the leaving spouse to show lawful cause for his departure. Such reasoning is patently incorrect.[4]
This erroneous reasoning (also prevalent in circumstantial evidence cases further made mysterious by use of the Latin term "res ipsa loquitur") confuses the burden of proof (which is applied only at the conclusion of the case) and the burden of proceeding forward with the evidence (which does shift during the trial after certain evidence has been presented). This latter burden, however, is a relatively insignificant concept in Louisiana, which has no procedural vehicle, such as the motion for directed verdict, by which a dismissal can be obtained during the trial but before its conclusion. Under our procedural law the burden of proof is all important, and the defendant who believes that the plaintiff upon resting has failed in his burden of proof must decide whether to simply rest or to proceed with additional evidence.
I therefore technically disagree with language in the majority opinion about shifting of the burden of proof. In my appreciation of our procedural law, the burden of proof always remains with the plaintiff, *385 and when the burden is applied by the trial judge at the conclusion of the case, the plaintiff loses if he has failed to carry his burden.
NOTES
[1] Immediately after trial, the court ruled from the bench in favor of Mrs. Chamblee, and counsel for Mr. Chamblee filed an application for new trial on October 10, 1975. When the court signed the written judgment on October 17, 1975, the application was acted upon, being then denied. Petition for appeal was filed on October 23, 1975, and the appeal was granted on October 24, 1975. The appeal bond was filed on November 19, 1975. Normally, under LSA-C.C.P. Art. 3942, which adopts the applicable dates provided in Art. 2087(1)-(3), appellant has thirty days to take an appeal and furnish security therefor from "the court's refusal to grant a timely application for a new trial . . . ." Under C.C.P. Art. 1974, the delay for applying for a new trial commences to run on the day after the judgment was signed. Here, we find that the application for new trial was premature, not timely, and, thus, without legal effect. Hence, this matter falls under subsection (1) of Art. 2087. Accordingly, under LSA-C.C.P. Art. 1974, the delay for new trial commences to run on the day after the judgment was signed, viz. on October 18, 1975. Using this date as the starting point for computing the delay periods for the appeal application and appeal bond, we find the appeal bond to have been timely filed.
[2] Although "leaving" may be the harbinger of abandonment, there are many instances where such is not the case. Often the "leaving" party has "left" the matrimonial domicile completely free of any "fault" and has taken himself (or herself) away from the matrimonial domicile to prevent added financial drain, the uprooting of children, the uprooting of elderly parents, the overall social implications, etc., etc.
[1] The wife speculated, but failed to prove that these actions were connected with a romantic interest in another woman.
[2] Admittedly, I would have affirmed the judgment in favor of the wife, if unaccompanied by reasons, on the presumption that the trial judge had accepted the wife's version and rejected the husband's.
[3] Of course, some otherwise valid demands may be defeated by affirmative defenses or exceptions (such as a defense or exception based on prescription), and the party urging the defense or exception has the burden of proof in that respect.
[4] If such a plaintiff were to prove merely that the other spouse withdrew and then rested his case, the other spouse could also rest and thereby win the case on insufficiency of proof.